LOYALTY DEVELOPMENT COMPANY, LTD., Plaintiff-Appellee, Cross-Appellant, *v.* WHOLESALE MOTORS, INC., Defendant-Appellant, Cross-Appellee

and

WHOLESALE MOTORS, INC., Plaintiff-Appellant, Cross-Appellee, *v.* LOYALTY DEVELOPMENT COMPANY, LTD., Defendant-Appellee, Cross-Appellant

NO. 6544

JANUARY 25, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ., RETIRED JUSTICE KOBAYASHI AND CIRCUIT JUDGE CHANG ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* Loyalty Development Company, Ltd., (hereinafter Loyalty) filed a complaint seeking summary possession against Wholesale Motors, Inc., (hereinafter Wholesale) of two parcels of land heretofore leased to Wholesale by Loyalty. Loyalty alleged that Wholesale failed to pay rent as provided in the lease documents.

Wholesale, on the other hand, filed a complaint for Declaratory Relief, challenging the valuation basis utilized by a majority of a panel of appraisers, appointed in accordance with the provisions of the lease documents, in determining the market value of the subject properties.

The complaints were consolidated for the purpose of resolution by the trial court. After stating that a "bona fide dispute" existed between the parties, on motion for summary judgment filed by Loyalty, the trial court granted to Loyalty rental due with interest thereon at 6%, but denied Loyalty's motion for termination of the leases, issuance of a writ of possession, and for reasonable attorney's fees.

On motion for summary judgment filed by Wholesale the trial court granted Wholesale's motion that the leases not be terminated, that a writ of possession not be issued, and that Loyalty be denied reasonable attorney's fees, but denied Wholesale's motion in respect to the rentals due to Loyalty.

The basic issue herein is whether the market value of the demised premises as determined by a majority of a panel of appraisers is binding on the parties.

The lease documents contain the following relevant provisions regarding the computation of rent for the decade commencing on January 1, 1973:

> Such net annual rent for and during the next three successive ten-year periods and the remaining period of said term, commencing respectively on the 1st day of January in 1973, 1983, 1993 and 2003, as shall be determined for each of said periods by written agreement of the Lessor and Lessee or, if they fail to reach such agreement prior to such date which is ninety (90) days before the commencement of such period, the higher of the following two sums:

The product of the then prevailing rate of interest, charged by responsible lending institutions in the community for private loans in the security of real estate, and the then *market value* of the demised land, exclusive of improvements thereon, *as determined by appraisal;* or

The net rent hereunder payable for the year preceding such period;

Provided, however, that such net annual rent for the ten-year period commencing in 1973 shall not exceed twice the net annual rent hereunder payable for the year preceding such period. Monthly installments of rent at the same rate payable for the preceding year shall be paid on account of the rent for each such period until the determination thereof as herein provided. . . . (Emphasis added.)

In regard to appraisal the lease documents provide as follows:

Whenever this lease provides that the market value of the demised land shall be determined by appraisal for computation of any rent hereunder, said market value shall be determined by three impartial real estate appraisers, one to be appointed by each of the parties hereto, and the Lessor and Lessee each shall promptly name one such appraiser and give written notice thereof to the other party, and in case either party shall fail so to do within ten (10) days after such notice of the appointment of the first appraiser, the party naming the first appraiser may apply to any person then sitting as judge of the Circuit Court of the First Circuit of the State of Hawaii for appointment of a second appraiser, and the two appraisers thus appointed in either manner shall appoint a third appraiser, and in case of their failure so to do within ten (10) days after the appointment of the second appraiser, either party may have the third appraiser appointed by such judge, and the three appraisers so appointed shall proceed to determine the matters in question, and *the decision of said appraisers or a majority of them shall be*

*final, conclusive and binding on both parties hereto. . . .*
(Emphasis added.)

Wholesale contends that the majority of the appraisers erred in determining the market value of the demised premises on the highest and best use of said premises.

Wholesale contends that the market value of the demised premises must be determined on the actual use of the premises, to-wit: automobile dealership, and, in support of its position, cites the improvement requirements in the lease documents which obligates Wholesale to construct as follows:

a. On Lot 1115 — "Lessee will at its own expense during the first three (3) years of said term construct and complete on the demised land a new industrial building or buildings costing at least $80,000.00 in accordance with minimum building standards established for the subdivision by the Owners thereof and complete plans, specifications and plot plan therefor prepared for the Lessee by a licensed architect or engineer and approved in writing by the Lessor . . . ."

b. On Lot 1156 — "Lessee will at its own expense during the first three (3) years of said term construct and complete on the demised land a new building or buildings costing at least $120,000.00 in accordance with minimum building standard established for the subdivision by the Owners thereof and complete plans, specifications and plot plan therefor prepared for the Lessee by a licensed architect or engineer and approved in writing by the Lessor . . . ."

Additionally, Wholesale contends that the conduct of the parties herein basically restricted the use of the premises to that of an automobile dealership.

The essence of Wholesale's contention is that the lease provides for, and the conduct of the parties supports the conclusion that the premises have been demised for the restricted use of automobile dealership.

We conclude that Wholesale errs in its contention. Neither the provision in the lease, relied upon by Wholesale, nor the conduct of the parties, as reflected by the record,

supports the assertion of Wholesale. Furthermore, the lease documents provide the following in regard to the use of the premises: "Lessee will use and allow the use of said premises only for purposes permitted by the zoning ordinances . . . ." The zoning ordinance governing the use of the demised premises does not restrict the use of the premises to automobile dealership.

The question then is the finality of the market value of the demised premises as determined by the appraisers or a majority of them.

In our opinion, *Ching v. Hawaiian Restaurants, Ltd.*, 50 Haw. 563, 445 P.2d 370 (1968), is determinative of the issue herein.

*Ching* involved the following: In the event the lessors and lessee were unable to agree on the annual rental for any five-year period, a covenant in the lease provided for the appointment of three "appraisers" to determine the "fair market value" of the demised premises. It also provided that the fair market value as determined by any two of the appraisers was to be final, conclusive and binding upon both parties.

We held that "by this provision" (in the lease) the decision of the two appraisers had the binding effect of a judgment of a court of law, and that the function of the panel of appraisers was a function of a board of arbitration.

Additionally, we stated that, since the determination of "fair market value" by any two of the appraisers was "subject, however," to vacation or modification in accordance with the provisions of Chapter 188, Revised Laws of Hawaii 1955 (presently Chapter 658, Hawaii Revised Statutes), "it would seem that the parties to the lease contemplated arbitration."

We are of the opinion that, in substance, the pertinent provisions of the leases under consideration cannot be differentiated from *Ching*. We, therefore, conclude that the determination of market value of the demised premises made by the appraisers or a majority of them had the binding effect of a judgment of a court of law and that the function of the panel of appraisers herein was the function of a board of

arbitration. *See also Leeward Bus Co. v. City and County of Honolulu*, 58 Haw. 64, 564 P.2d 445 (1977).

Additionally, though the lease documents herein did not subject the determination of the appraisers or a majority of them to vacation or modification in accordance with Chapter 658, Hawaii Revised Statutes, we conclude that since the legislative policy is to encourage arbitration, the determination of market value by the appraisers or a majority of them can only be vacated or modified in accordance with said Chapter 658. *See Leeward Bus Co. v. City and County of Honolulu, supra*, 58 Haw. at 71, 564 P.2d at 449.

The record herein shows clearly that Wholesale has failed in its claimed "bona fide dispute" of the market value of the demised premises to fall within the scope of any of the provisions of either Section 658-9[1] or Section 658-10[2] of the Hawaii Revised Statutes (HRS). *Mars Constructors, Inc. v. Tropical*

[1] HRS § 658-9 reads:

Vacating award. In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or any of them;

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.

Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.

[2] HRS § 658-10 reads:

Modifying or correcting award. In any of the following cases, the court may make an order modifying or correcting the award, upon the application of any party to the arbitration:

(1) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;

(2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the

*Enterprises, Ltd.*, 51 Haw. 332, 460 P.2d 317 (1969). Wholesale has further failed to file its notice of motion to vacate, modify or correct as required by the provisions of HRS § 658-11.[3]

We, therefore, affirm the trial court's order granting Loyalty's motion for summary judgment in regard to the delinquent rentals claimed against Wholesale.

Wholesale, however, contends that the trial court erred in granting Loyalty's prayer for interest in view of Wholesale's offer to pay the rentals in question.

The record is clear that Wholesale did not pay any portion of the increased monthly rental payable after January 1, 1973. There is no question that Loyalty demanded the increased rent which the appraisers' decision subsequently confirmed. It is also clear that Wholesale failed to make an unconditional tender of the increased monthly rent to Loyalty. At best, Wholesale's offer of payment of the rentals due was conditionally made, and rejected by Loyalty.

Clearly, a conditional offer to pay the rentals due does not constitute proper tender of payment of the rentals. 86 C.J.S. Section 27.

We, therefore, conclude that the trial court did not err in holding that interest at 6% started to accrue on the unpaid

---

matters submitted;

(3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof, and promote justice between the parties.

[3] HRS § 658-11 reads:

Notice of motion to vacate, modify, or correct; stay. Notice of a motion to vacate, modify, or correct an award, shall be served, in the manner prescribed for service of notice of a motion in an action, upon the adverse party or his attorney within ten days after the award is made and served. For the purposes of the motion any judge who might make an order to stay the enforcement of a judgment, in an action brought in the same court, may make an order to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award. The record shall be filed with the motion as provided by section 658-13.

rentals from January 1, 1973, in accordance with the provisions of HRS § 478-1(1).[4]

Further, we reverse the trial court's denial of Loyalty's motion for summary judgment in regard to reasonable attorney's fees. The lease documents provide as follows:

> Lessee will pay to the Lessor on demand all costs and expenses including reasonable attorney's fees incurred by the Lessor in enforcing any of the Lessee's covenants herein contained, in remedying any breach thereof, in recovering possession of said premises or any part thereof, in collecting any delinquent rent . . . hereunder payable by the Lessee. . . .

We hold that Wholesale is liable to pay to Loyalty attorney's fees reasonably and necessarily incurred by Loyalty in the proceedings herein and in protecting its interest under the leases. We remand this case to the trial court for the determination thereof. *See Food Pantry v. Waikiki Business Plaza. Inc.*, 58 Haw. 606, 619-621, 575 P.2d 869, 878-880 (1978).

We affirm, however, the trial court's grant of Wholesale's motion for summary judgment that the leases not be terminated and that a writ of possession not be issued.

In *Food Pantry, supra,* we stated, 58 Haw. at 613-614, 575 P.2d at 875-76:

> In an action for declaratory judgment, the court is empowered to grant ancillary equitable relief. (Citations omitted.) And in the exercise of its general equity jurisdiction over forfeitures and penalties, it may afford relief against forfeiture for the breach of a covenant in a lease. . . . (Citations omitted.)
>
> . . . [W]here the lessee's breach has not been due to gross negligence, or to persistent and wilful conduct on his part, and the lessor can reasonably and adequately be

---

[4] HRS § 478-1(1) reads:

Legal rate; computation. When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of six per cent a year as follows:

(1) For money due on any bond, bill, promissory note, or other instrument of writing, or for money lent, after it becomes due.

compensated for his injury, courts in equity will generally grant relief. This matter is addressed to the sound discretion of the trial court acting in accordance with established principles of equity, and its determinations will not be set aside unless manifestly against the clear weight of the evidence. . . . (Citation omitted.)

In the instant case Wholesale's breach of the lease covenant, for the payment of rental, was not due to gross negligence or to persistent and wilful conduct on its part. The trial court, in fact, concluded that there was a "bona fide dispute" between Wholesale and Loyalty in regard to the valuation basis of the "market value" of the demised premises. Though Wholesale erred in its contentions, its error was not premised on gross negligence or to persistent and wilful conduct. Furthermore, Loyalty can be reasonably and adequately compensated for its injury and loss.

Accordingly, we conclude that the trial court did not abuse its discretion in refusing to terminate the leases and to issue a writ of possession of the premises to Loyalty.

*W. Patrick O'Connor (Barlow & O'Connor* of counsel) for Wholesale Motors, Inc.

*Neil F. Hulbert (Hong* and *Iwai* of counsel) for Loyalty Development Company, Ltd.