IN THE MATTER OF THE ARBITRATION BETWEEN
THE OAHUAN, LTD., Appellee, and TRUSTEES OF
THE VIOLET K. MAERTENS TRUST ESTATE, Appel-
lants

NO. 8752

(SPECIAL PROCEEDINGS NO. 5642)

JUNE 22, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Lessors Kamehameha Maertens and Marguerite F. Kau-
hane, Trustees of the Violet K. Maertens Trust Estate (the
Trustees), appeal the circuit court's confirmation of an arbitra-
tion award establishing the lease rent payable by lessee The
Oahuan, Ltd. (Oahuan), a Hawaii corporation.

The only issue is whether the arbitrators' determination of
the annual lease rent of $35,880 may be vacated under Hawaii

Revised Statutes (HRS) § 658-9 (1976)[1] or modified or corrected under HRS § 658-10 (1976).[2] We affirm the confirmation of the arbitration award.

The Trustees are the owners and successor lessors of certain adjoining parcels of land totaling 29,998 square feet in area in Makiki, Honolulu, improved with a 46-unit cooperative apartment complex. Oahuan is the successor lessee of the parcels under four separate leases dated February 1, 1956 and containing identical provisions.

The leases provide for a 55-year term at a fixed rent for the first 25 years. The rent for each of the ten-year periods commencing February 1, 1981, is to be set in accordance with paragraph (3) of the leases which provides in pertinent part as follows:

> (3) For and during each of the three (3) ten-year periods

---

[1] Hawaii Revised Statutes § 658-9 (1976) reads:

Vacating award. In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or any of them;

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.

Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.

[2] Hawaii Revised Statutes § 658-10 (1976) provides:

Modifying or correcting award. In any of the following cases, the court may make an order modifying or correcting the award, upon the application of any party to the arbitration:

(1) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;

(2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;

(3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof, and promote justice between the parties.

thence next ensuing of the term hereby demised, the rental shall be such sum per annum, payable monthly in advance, as shall be mutually agreed upon by and between the Lessee and the Lessor. In the event that the Lessor and the Lessee shall fail to reach an agreement respecting the annual rent to be paid for any of such period at least ninety (90) days prior to the commencement of each of said ten-year periods, the annual rental for any such period shall be *the then market value of the land* as of the first day of such period, *excluding improvements,* multiplied by the then prevailing rate of return on land of similar type and location, but not less than six per cent (6%) per annum of *the fair and reasonable market value of the land hereby demised, exclusive of improvements,* net above taxes, assessments and charges; . . . . [Emphasis added.]

Paragraph (3) further provides that "the fair and reasonable market value of the demised land exclusive of buildings shall be determined by three (3) impartial arbitrators, all of whom shall be members of the American Institute of Real Estate Appraisers."

The parties were unable to mutually agree upon the rent for the ten-year period beginning February 1, 1981. Oahuan started the arbitration process by selecting Wendell H. Martin (Martin) as its arbitrator and the Trustees selected John J. Hulten (Hulten). The parties agreed to forego a third arbitrator if Martin and Hulten could agree upon the lease rent.

Martin and Hulten did agree and on October 1, 1981, they forwarded their Decision and Award dated September 29, 1981 to the Trustees and Oahuan. By letter dated October 7, 1981, Hulten informed the Trustees' counsel that "in reaching my decision and in making the award in this matter, I valued the real property as encumbered by the existing lease and gave consideration to the nature and quality of existing improvements to the property."[3]

---

[3] When his deposition was taken, John J. Hulten testified that Don Hamilton, counsel for the Trustees, drafted the letter which he signed. Deposition of John J. Hulten at 32-33 (October 28, 1981).

On October 9, 1981, the Trustees filed their motion to vacate, modify or correct the arbitration award. On October 19, 1981, Oahuan, in turn, filed its motion for an order confirming the arbitration award. On April 19, 1982, the trial court filed its order and judgment confirming the arbitration award. The Trustees' timely appeal followed.

I.

Our supreme court has developed certain principles applicable to the law of arbitration. First, as proclaimed by our legislature, the public policy in this jurisdiction "is to encourage arbitration as a means of settling differences and thereby avoid litigation." *Gadd v. Kelley,* 66 Haw. ___ (Nos. 8388 and 8446, June 16, 1983) (citing *Gregg Kendall & Associates, Inc. v. Kauhi,* 53 Haw. 88, 93, 488 P.2d 136, 140 (1971)). *See also Loyalty Development Co., Ltd. v. Wholesale Motors, Inc.,* 61 Haw. 483, 605 P.2d 925 (1980); *Leeward Bus Co. v. City and County of Honolulu,* 58 Haw. 64, 564 P.2d 445 (1977); *Hayashi v. Chong,* 2 Haw. App. 411, 634 P.2d 105 (1981).

Second, to discourage litigation, arbitrators are deemed to have wide discretion in the making of their decisions and awards. When an issue is submitted, the entire question, including the legal construction of terms in a contract or lease, is to be determined by the arbitrator. *See Ching v. Hawaiian Restaurants, Ltd.,* 50 Haw. 563, 445 P.2d 370 (1968). As early as 1883, our supreme court stated that an arbitration "award, if made in good faith, is conclusive upon the parties, and that neither of them can be permitted to prove that the arbitrators decided wrong either as to the law or the facts of the case." *Thomas v. Lunalilo Estate,* 5 Haw. 39, 40 (1883). *See also Richards v. Ontai,* 20 Haw. 198 (1910). In *Mars Constructors, Inc. v. Tropical Enterprises, Ltd.,* 51 Haw. 332, 336, 460 P.2d 317, 319 (1969), our supreme court said that where the parties voluntarily agreed to arbitrate, "they thereby assumed all hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact."

Third, correlatively, the scope of judicial review of arbitration awards is severely limited. In *Mars Constructors,* 51 Haw.

at 335, 460 P.2d at 319, the court stated:

> We are aware that there are disagreements among courts and also among legal scholars on the question of the extent to which arbitration awards should be subjected to judicial control. This court has decided to confine judicial review to the strictest possible limits. [Citations omitted.]

Judicial review of arbitration awards is circumscribed by HRS § 658-9 as to their vacation and by HRS § 658-10 as to their modification or correction, *Mars Constructors, supra,* and the "court has no business weighing the merits of . . . the award." *Local Union 1260, AFL-CIO v. Hawaiian Telephone Co.,* 49 Haw. 53, 58, 411 P.2d 134, 137 (1966). However, where the arbitrators exceed their powers and fail to decide the question submitted to them in violation of HRS § 658-9, the arbitration award will be vacated. *Brennan v. Stewarts' Pharmacies, Ltd.,* 59 Haw. 207, 579 P.2d 673 (1978).

Fourth, HRS §§ 658-9 and 658-10 also restrict the authority of appellate courts "to review judgments entered by circuit courts confirming the arbitration awards." *Mars Constructors,* 51 Haw. at 336, 460 P.2d at 320.

We will apply the foregoing principles in the determination of this appeal.

## II.

The Trustees contend that (1) the words "excluding improvements" and "exclusive of improvements" in paragraph (3) of the leases are in "plain English" and unambiguous; (2) Hulten disregarded those words, appraised the land involved as encumbered by the leases, and considered in the appraisal process the actual use of the land instead of its highest and best use; (3) consequently, the arbitrators "exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made" (HRS § 658-9(4)) or they, in effect, "awarded upon a matter not submitted to them" (HRS § 658-10(2)); and (4) thus, the circuit court erred in not vacating or modifying or correcting the arbitration award. We disagree.

From the record it is clear that to Hulten, a professional

appraiser, and to others in the profession, the words "exclusive of improvements" in the leases had a meaning other than that advanced by the Trustees. When deposed, Hulten testified as follows:

Q. [Oahuan's counsel] Okay; wait.

"Exclusive of improvements" — I'm going to ask you to define "exclusive of improvements" and "unencumbered by improvements."

Okay. What does "exclusive of improvements" mean?

A. It means that the rent — the figure for the rent shall not include any rent for improvements.

Q. Does that mean that in determining the market value or rent — does that mean in determining the rental in a situation where it's exclusive of improvements that, first of all, you will still determine what the value of the fee is?

A. You still determine the fee value, but in my —

Yes, I would determine it as encumbered by the buildings that are on it, we'll say.

Q. So, in other words, the highest and best use would be limited by —

A. Limited by the actual —

Q. — actual use?

A. Actual use, let's say.

Q. Okay.

A. [sic] And, secondly, after determining the fee, you would then figure on what the rate of return was which would then indicate what the fair rental was?

A. Fair rental was, correct.

Q. So that "exclusive of improvements" means, then, that you would determine the fee value based on the highest and best use limited by the actual use?

A. That's correct.

Q. Okay. And when you say "exclusive of improvements," that's what it means?

A. That's what it means.

Q. Okay. How does "unencumbered of improvements" or "unencumbered by improvements" differ from that?

A. If the lease said you were to value this as if unencumbered by improvements, then I would value it as its

highest and best use as if vacant, as if —

Q. Okay. So, then, the highest and best use would be such that the highest and best use would be set by code and regulations?

A. Yeah. Again, provided the lease were [sic] long enough that you could do that with it, yeah.

Deposition of John J. Hulten (hereinafter "Deposition") at 23-24 (October 28, 1981).[4]

Hulten further testified:

Q. [Oahuan's counsel] Okay. So that . . . your understanding is . . . that when you are asked to determine the value of a parcel of real property, that when you determine highest and best use, that you feel that you are bound by the actual use as then exists or the actual limitations as then exist under the terms of the lease; is that correct?

A. Well, that's — that should be given consideration. I don't say I'm bound to it but that I must give it consideration. I can't ignore that.

\*　\*　\*　\*　\*

Q. Now, what authority is there that says that if it is not vacant that the actual use has any bearing on the determination of highest and best use?

A. Well, because it's — it's axiomatic that land is worth what it will produce, what it's capable of producing. Now — in other words, you have to look at it — the use is inextricably involved in valuing property. If sugar cane land produces so many tons of sugar per acre, it's worth one figure. If it produces so many more tons of sugar per acre, it would be worth more; and so many less, it would be worth less.

---

[4] In the Stipulation Concerning Written Arguments and Stipulated Testimony; Order filed on November 18, 1981, the parties stipulated as follows:

[B]3. The transcript of the deposition of John J. Hulten, M.A.I. taken on October 28, 1981, with its correction pages, shall be considered the testimony of Mr. Hulten in this matter, shall constitute a portion of this record for all purposes, and may be considered by this Court in reaching its decision.

Record at 269-71.

The record does not include the testimony of any witness other than Hulten.

Now, Waikiki is a good example of the reverse of this situation. There was a property — Waikiki's been down-zoned.

Q. I understand that.

A. Okay. So before the down-zoning, there was a property built; and the density and the use of that property now is over twice what would be permitted under the current zoning. [Deposition at 11-13.]

Hulten's testimony was that two appraisers in Honolulu, Clair DeVault and Martin, agreed with his theory of appraising land encumbered by a lease and improvements thereon, but that other appraisers disagreed with him. Deposition at 8-9. Thus,the record shows that there was a divergence of opinion in the appraisal profession as to the meaning of the term "exclusive of improvements."

Applying the principles set forth above, we hold that once the determination of the "fair and reasonable market value" of the land "exclusive of improvements" was submitted for arbitration, the entire question, including the interpretation of the terms "exclusive of improvements" and "excluding improvements," was to be determined by arbitrators Hulten and Martin, *Ching v. Hawaiian Restaurants, Ltd., supra,* and HRS §§ 658-9 and 658-10 preclude us from reviewing the merits of their decision. *See Mars Constructors, Inc. v. Tropical Enterprises, Ltd., supra.* The arbitrators in good faith did not exceed or imperfectly execute their powers or make an award upon a matter not submitted to them.

The Trustees, nevertheless, argue that *Loyalty Development Co., Ltd. v. Wholesale Motors, Inc., supra,* requires us to reverse the lower court. In *Loyalty Development,* 61 Haw. at 485, 605 P.2d at 927, the lease provided that "three impartial real estate appraisers" were to determine "the then *market value* of the demised land, exclusive of improvements thereon." The arbitration award was based on a market value determined by the highest and best use of the land. The lessee sought declaratory relief contending that the determination of market value should have been based on the actual use of the demised land.

In *Loyalty Development,* the basic issue was "whether the market value of the demised premises as determined by a

majority of a panel of appraisers is binding on the parties."
*Loyalty Development,* 61. Haw. at 484, 605 P.2d at 926. The
issue was not what the term "exclusive of improvements there-
on" meant. In *Loyalty Development,* as in *Ching, supra,* the
lease used the terms "appraisal" and "appraisers," instead of
"arbitration" and "arbitrators." Arguably, if the *Loyalty
Development* lease called for appraisal, rather than arbitra-
tion, the lessee could seek a judicial construction of the term
"exclusive of improvements thereon." However, our supreme
court unequivocally stated:

> We are of the opinion that, in substance, the pertinent
> provisions of the leases under consideration cannot be
> differentiated from *Ching.* We, therefore, conclude that the
> determination of market value of the demised premises
> made by the appraisers or a majority of them had the
> *binding effect of a judgment of a court of law* and that the
> function of the panel of appraisers herein was the function
> of a board of arbitration. *See also Leeward Bus Co. v. City
> and County of Honolulu,* 58 Haw. 64, 564 P.2d 445 (1977).

*Loyalty Development,* 61 Haw. at 487-88, 605 P.2d at 928
(emphasis added).

Thus, we read *Loyalty Development* to stand for the prop-
osition that the arbitrators are to determine all questions
submitted to them for arbitration, including the construction
of terms in the lease, and their decision is binding and final. The
Trustees' reliance on *Loyalty Development* is misplaced.

Affirmed.

*Robert Bruce Graham (Cheryl A. Nakamura* also on the
briefs; *Hamilton, Gibson, Nickelsen, Rush & Moore,* of coun-
sel) for appellants Trustees.

*Robert T. Takamatsu (Bert T. Kobayashi, Jr.* also on the
brief; *Kobayashi, Watanabe, Sugita & Kawashima,* of counsel)
for appellee The Oahuan, Ltd.