BECLAR CORPORATION, Plaintiff-Appellant, and LORNA SILKWOOD REALTY, INC., Plaintiff, *v.* RICHARD YOUNG and HARRIET YOUNG, Defendants-Appellees, and KEVIN PILLARD, Third-Party Defendant-Appellant, and LORNA SILKWOOD, Third-Party Defendant

(CIVIL NO. 85-1566)

RICHARD YOUNG and HARRIET YOUNG, Plaintiffs-Appellees, *v.* KEVIN PILLARD, Defendant-Appellant

(CIVIL NO. 85-3437)

NO. 11834

FEBRUARY 5, 1988

BURNS, C.J., HEEN AND TANAKA, JJ.

184

OPINION OF THE COURT BY HEEN, J.

Beclar Corporation (Beclar), a Hawaii corporation, the plaintiff-counterclaim defendant in Civil No. 85-1566, appeals from a directed verdict against it which was based upon the trial court's ruling that Beclar had violated an option agreement (option) between Kevin Pillard (Pillard), the third-party defendant in Civil No. 85-1566 and the defendant in Civil No. 85-3437,[1] and Richard Young (Richard) and Harriet Young (Harriet) (collectively the Youngs), who are the defendants-counter-claimants and third-party plaintiffs in Civil No. 85-1566 and the plaintiffs in Civil No. 85-3437. The option was for Pillard's purchase of real property owned by the Youngs and had been assigned by Pillard to Beclar prior to suit. Pillard appeals from the judgment in Civil No. 85-3437, awarding $13,639.89 to the Youngs for unpaid rent and penalties under a lease (lease) of the same property from the Youngs. Hereinafter, where appropriate, Beclar and Pillard will be referred to, collectively, as Appellants. We affirm in part and vacate in part, and remand to the trial court.

---

[1] Civil Nos. 85-1566 and 85-3437 were consolidated for trial.

## I.

On October 1, 1980, Pillard leased the property, consisting of 14,041 square feet with a single family residence, from the Youngs for a five-year term. At the same time the Youngs and Pillard executed the option giving Pillard the right to purchase the property during the lease term. Although Section One of the option set the purchase price at $166,000, the price was subject to a reduction equivalent to 20% of the rent paid over the lease term, and an increase equivalent to 20% of any increase in the "appraised value" of the property. In the event the parties to the option could not agree on the "appraised value" Section Seven provided:

### APPOINTMENT OF APPRAISER

With regard to Section One, if the parties are unable to agree to the appraised value of the property and the improvements thereon, they shall attempt to choose an appraiser to determine the value of the property and the improvements thereon. If the parties are unable to choose an appraiser then they shall apply to the motions judge sitting in the First Circuit Court, State of Hawaii, to have the judge appoint an appraiser to determine the fair market value of the property and the improvements. The decision of the appraiser shall be final and binding upon the parties subject to the right of appeal pursuant to the provisions of the Hawaii Revised Statutes then in effect, relating to such appeal rights.

The property was in an area zoned for a minimum lot size of 7,500 square feet per residence and could not be subdivided, nor could another dwelling unit be erected on it without a variance from the City and County of Honolulu or acquisition of an additional 959 square feet of adjoining land. On November 19, 1980, Pillard obtained an appraisal indicating a value of $175,000. On November 18, 1984, Pillard notified the Youngs that he had assigned the option to Beclar.

Beclar hired Lorna Silkwood Realty, Inc. (Realty), to assist it in marketing the property, and Realty found a buyer who entered into a contract to purchase that part of the property on which the

residence was located on condition that Pillard obtain approval to subdivide the property on or before closing of the sale on January 15, 1985. On December 14, 1984, Beclar exercised the option in writing. Beclar and the Youngs were unable to agree on the value of the property, and during the ensuing month and a half they debated over price and the choice of an appraiser.

In a letter to the Youngs dated January 17, 1985, Beclar rejected both the Youngs' proposed appraised value of $210,000 and their choice of an appraiser. Beclar suggested that the firm of Alexander and Alexander (Alexander) be engaged as the appraiser. The Youngs responded with a letter dated January 22, 1985, in which they stated in part:

> Since you insist you want the appraisal done by Alexander and Alexander, we agree. The appraisal figure to be set by Alexander and Alexander will be the absolute price with which we complete the deal with [sic]. There will not be any further negotiation concerning the appraisal value of the property. We are taking just as much a chance as you are. The Alexander and Alexander appraisal price may come in much lower than we expected, but we are willing to accept that. On the other hand, it may come in higher and you should accept that.

Additionally, the Youngs' letter demanded that Beclar give them a formal "exercise of the option" document which was to state that the Alexander appraisal would be a binding figure.[2] They also demanded that Beclar agree that the reduction in the purchase price based on the rent would terminate on the day the appraisal was received, and that Beclar submit a statement forfeiting its option rights in the event the sale was not closed. Finally, they demanded a certified check from Beclar for $175.00 to cover one-half of the appraisal costs.

On January 24, 1985, Beclar responded by letter thanking the Youngs for agreeing to have Alexander appraise the property, but not mentioning the demands the Youngs had made in the January 22 letter. The Youngs did not reply to Beclar's January 24, 1985 letter, but on January 25, 1985, Harriet delivered a check for $175.00 to Alexander to cover one-half of the appraisal. Also, on

---

[2] The Youngs do not argue on appeal that the option was not validly exercised.

January 25, 1985, the Youngs wrote to First American Title Company of Hawaii, Inc. (First American), which had been designated as the escrow agent in the option, requesting First American's assistance in obtaining compliance with their January 22, 1985, demands to Beclar. Alexander's appraisal report was completed on January 25, 1985, and the property was appraised at $180,000 (Beclar's appraisal).

On February 1, 1985, Beclar wrote to First American instructing it to proceed with the closing. On the same day, the Youngs wrote to Beclar as follows:

> You were given until January 31, 1985 to decide whether you'd accept directions for a mutual agreement to seek a fair appraisal from Alexander and Alexander.
>
> In your letter dated January 24, you did not agree to do so. Subsquently [sic] whatever you have done on your own has no bearing on the completion of this transaction. For contrary to what you said in that letter that you would have the title company seek appraisal, and contrary to the mutual agreement mentioned in our letter of Jan. 22nd, you just went ahead and had Herb Costello give money — $160.00 to the title company and then order an appraisal on your own from Alexander and Alexander.[3]
>
> That was your unilateral decision to have that independent appraisal done. We have nothing to do with it, and won't abide by it because it's done without our approval, and not jointly. . You will pay for it.
>
> Your option to purchase our property will not be exercised until you can come to terms with us about how a fair appraisal can be conducted. [Footnote added.]

On February 6, 1985, after receiving Beclar's appraisal report, the Youngs wrote to Beclar requesting an amended appraisal claiming that Beclar's appraisal was based on incomplete information. The Youngs' attempt to get Beclar to agree to an amended appraisal proved unsuccessful, and the Youngs unilaterally informed Alexander that the City had granted a variance from the

---

[3] Herb Costello was a real estate salesman with Lorna Silkwood Realty, Inc. (Realty).

zoning regulations applicable to the property so that an additional dwelling and carport could be constructed on the property without subdividing it. On the basis of that information an amended appraisal report was issued on February 12, 1985, establishing the property's value at $200,000 (Youngs' appraisal). Beclar refused to be bound by the Youngs' appraisal.

Beclar and Realty commenced Civil No. 85-1566 against the Youngs in the first circuit court on April 23, 1985. In an amended complaint Beclar and Realty claimed (1) damages for the Youngs' breach of the option; (2) reimbursement for money spent by Pillard and Beclar in improving the premises; (3) damages for the Youngs' intentional interference with Beclar's contract with its prospective buyer; (4) a commission to Realty for having found the prospective buyer; (5) damages under Hawaii Revised Statutes (HRS) § 480-2 for Richard's failure to disclose at the time the option was executed that he was a licensed real estate broker; and (6) punitive damages. The Youngs filed counterclaims and third-party complaints against Pillard and Lorna Silkwood individually.[4]

On September 9, 1985, the Youngs brought Civil No. 85-3437 against Pillard in the Honolulu district court for summary possession of the property and damages for unpaid rent. The case was removed to the first circuit court when the issue of title was raised by Pillard. *See* HRS §§ 604-5(d), 603-21.5(3).

In circuit court the parties stipulated to consolidation of the cases, and a jury trial was held. Civil No. 85-1566 was treated by all concerned as a contract action and at the close of the evidence the trial judge entered a directed verdict against both Beclar and the Youngs on the option issue, holding that they had both materially breached the option by failing to apply to the motions judge of the first circuit court for appointment of an appraiser. All claims and counterclaims were dismissed except for the Youngs' claim against Pillard for unpaid rents and Beclar's claim for reimbursement from the Youngs for the cost of improvements.[5] The court further

---

[4] The record indicates that Realty's claim against the Youngs and the Youngs' claims against Realty and Lorna Silkwood individually were orally dismissed; however, there is no written order of dismissal in the record.

[5] It appears that Pillard was the sole stockholder of Beclar and all concerned treated the expenditures for improvements to have been made by either or both of them.

ruled that, the lease agreement having expired, the Youngs were entitled to possession of the property.[6]

The jury returned a special verdict finding that:

(1) Pillard owed the Youngs $13,639.89 in back rent and penalties;

(2) Pillard had improved the property;

(3) The Youngs had not authorized the improvements;

(4) It would be fair to award Pillard the value of the improvements; and

(5) The Youngs owed Pillard and Beclar $17,800.00 for the improvements.

Judgment for the amounts awarded by the jury and cancellation of the option was entered. Thereafter, Beclar and Pillard jointly appealed.[7]

Appellants assert that the court erred in:

(1) ruling that Beclar had violated the option;

(2) dismissing its claim for tortious interference with contract;

(3) dismissing its HRS chapter 480 claim; and

(4) denying Appellants' request for costs.

However, in our view, the more fundamental question presented in this appeal is whether the trial court erred in allowing the parties to treat this case as a contract action rather than an arbitration action. We will discuss that question first.

## II.

At oral argument we raised the issue, *sua sponte*, whether the option is an arbitration agreement, and whether its enforcement is

---

[6] On December 3, 1986, the trial court authorized a writ of possession to issue, but stayed execution of the writ until December 15, 1986, on condition that before November 21, 1986, Pillard pay the lease rent due for the period from November 1, 1986, to December 15, 1986. If Pillard did not make the payment as ordered, the writ was to issue. We do not know if the payment was made or the writ was issued.

[7] Although Pillard appealed, he presented no argument in the briefs regarding the $13,639.89 judgment against him for unpaid rents and he is deemed to have abandoned that issue. *Meyer v. City and County of Honolulu,* 6 Haw. App. ___, ___, 729 P.2d 388, 395, rev'd in part, 69 Haw. ___, 731 P.2d 149 (1986). However, his liability for unpaid rents is closely related substantively to the question of the violation of the option and should be re-tried. *See Shoemaker v. Takai,* 57 Haw. 599, 561 P.2d 1286 (1977).

governed by HRS chapter 658 (1985). In response, the parties insisted that the option is not an arbitration agreement.

## A.

The option is clear and unambiguous and its interpretation is a question of law which may be made by this court, *Lundburg v. Stinson,* 5 Haw. App. 394, 695 P.2d 328 (1985), and the parties' agreement on the question of law is not binding on us. *Heifetz v. Bank of America Nat. Trust and Sav. Ass'n,* 147 Cal. App. 2d 776, 305 P.2d 979, 62 A.L.R.2d 1403 (1957). Consequently, we are free to interpret the option and apply the correct law to its enforcement. *Lundberg v. Stinson, supra.* In making our interpretation, we view the option as a whole. *Ching v. Hawaiian Restaurants, Ltd.,* 50 Haw. 563, 445 P.2d 370 (1968).

Taken as a whole the option clearly contemplates that Pillard purchase and the Youngs sell the property at a price to be determined in accordance with Section One's formula, which is based upon the "appraised value" of the property. Section Seven establishes the method for settling any dispute over the appraised value of the property, and the result of the process is binding on both parties, subject to limited appeal. *See* HRS § 658-9 and -10 (1985). The question is whether the parties may enforce the option in a contract action rather than an action to confirm the appraisal as an arbitration award. For the reasons stated below, we hold they may not.

## B.

First, such action would be contrary to this jurisdiction's public policy.

As a matter of public policy established by the legislature in HRS chapter 658 arbitration is to be encouraged as a method of resolving differences, thereby avoiding litigation. *Loyalty Development Co., Ltd. v. Wholesale Motors, Inc.,* 61 Haw. 483, 605 P.2d 925 (1980); *In re The Oahuan, Ltd.,* 4 Haw. App. 295, 666 P.2d 603 (1983). Additionally, the supreme court, in response to concerns voiced over increased litigation and delays in obtaining adjudica-

.tion of individual cases, promulgated on January 22, 1986, the Hawaii Arbitration Rules (HAR), which reinforce that public policy and have expanded the role of arbitration as a vehicle for resolving disputes.

In *Leeward Bus Co., Ltd. v. City and County of Honolulu,* 58 Haw. 64, 564 P.2d 445 (1977), the supreme court held that one party to an arbitration agreement could not abandon the arbitration process once it had begun observing its terms, stating that, "[t]he effectiveness of arbitration as a vehicle for the resolution of disputes depends in part upon the predictability of its efficiency. * * * [P]redictability is not assured if the caprice of the parties controls the * * * process." *Id.* at 71, 564 P.2d at 449.

We are aware that in *Moorcroft v. First Insurance Co. of Hawaii, Inc.,* 68 Haw. _____, 720 P.2d 178 (1986), our supreme court held that the parties may waive their rights under an arbitration agreement, and it may be argued here that the parties have waived their rights under the option. However, *Moorcroft* is distinguishable.

In *Moorcroft, supra,* the parties never embarked on the arbitration process. In the instant case, the parties had in fact entered into the arbitration process established by the option, but in the end refused to be bound by the other's appraised value. They had not waived their rights and could not abandon the process. *Leeward Bus, supra.*

## C.

Second, each party in fact sought to establish its appraisal as an arbitration award.

A close examination of the complaint in this case indicates that Beclar's goal in filing suit was to establish his appraisal as the correct appraised value under the option. That was essential to his theory that the Youngs had breached the option. In their counterclaim and at trial the Youngs sought to discredit Beclar's appraisal and have the trial court adopt theirs as the correct valuation. Clearly, each party was seeking confirmation of one of the appraisals. Civil No. 85-1566 was an attempt by both parties to enforce an

arbitration award; however, it was camouflaged as a contract action and was erroneously tried as such.[8]

### D.

We hold that where the parties to an arbitration agreement seek enforcement of the agreement's provisions regarding resolution of covered disputes, they must do so pursuant to HRS chapter 658. *See Loyalty Development Co., Ltd. v. Wholesale Motors, Inc., supra.*

To hold otherwise would be to allow the parties to an arbitration agreement to undermine the effectiveness of the arbitration process and contravene the goals of the public policy of this state.

The court should have treated the case as one for confirmation of an arbitration award pursuant to HRS § 658-8 (1985).[9] The court should have (1) required the parties to amend the complaint and counterclaim accordingly and (2) determined (a) whether Beclar's appraisal was the arbitrator's award and confirmed it, or (b) whether, in view of Alexander's admission that the variance was not considered in arriving at Beclar's appraisal, Young's appraisal was the arbitrator's award, and confirmed it, or (c) whether, because Alexander had imperfectly executed its powers, neither appraisal was confirmable and vacated both awards under HRS § 658-9(4) (1985).[10]

---

[8] The Youngs did not appeal the directed verdict against them. In our view that is not fatal to them. Because the approach to the case was wrong at the outset, the court's ruling was a fundamental error and inextricably related to the issue raised by Beclar. *Shoemaker v. Takai, supra.*

[9] HRS § 658-8 (1985) provides in pertinent part:

Award; confirming award. * * * At any time within one year after the award is made and served, any party to the arbitration may apply to the circuit court specified in the agreement, or if none is specified, to the circuit court of the judicial circuit in which the arbitration was had, for an order confirming the award. Thereupon the court shall grant such an order, unless the award is vacated, modified, or corrected, as prescribed in sections 658-9 and 658-10.

[10] HRS § 658-9(4) (1985) provides in pertinent part:

Vacating award. In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:

* * *

(4) Where the arbitrators exceeded their powers, or so imperfectly executed

## III.

We find no merit in Beclar's assertion that the circuit court erred in dismissing its claim for tortious interference with contract. In *Burgess v. Arita*, 5 Haw. App. 581, 704 P.2d 930 (1985), we articulated the following elements that must be proved in a claim for tortious interference with contractual relations:

> (1) a contract between the plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) the defendant's intentional inducement of the third party to breach the contract, (4) absence of justification on the defendant's part, (5) the subsequent breach of the contract by the third party, and (6) damages to the plaintiff.

*Id.* 5 Haw. App. at 594, 704 P.2d at 939 (citations omitted). Although Beclar argues that the Youngs knew of its contract to sell the property, it does not argue, and there is no evidence in the record, that the Youngs had any contact with the prospective purchaser or induced the purchaser to breach the agreement. In the absence of such evidence, the trial court's ruling was correct.

## IV.

Appellants argue that when the option was executed, Richard did not tell Pillard that Richard was a licensed real estate broker, in violation of Title 16, Administrative Rules Chapter 99 Real Estate Brokers and Salesmen, § 16-99-3(h) (1983).[11] Arguing that the vio-

---

them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.

Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.

[11] Section 16-99-3(h) (1983) reads as follows:

The licensee shall not acquire an interest in or buy for one's self, any member of the licensee's immediate family or firm, or any entity in which the licensee has any ownership interest, property listed with the licensee or the licensee's firm, without making the true position known in writing to the listing owner. When offering for sale, lease, or rental, property which the licensee owns or has an interest in, the licensee shall fully inform the employing broker of the licensee's intention to sell, lease, or rent, and of the licensee's interest in the property. The licensee shall reveal the interest to the purchaser, lessee, or tenant in writing prior to accepting any offer.

lation was a deceptive trade practice under HRS § 480-2 (1985),[12] Appellants contend that evidence of the fact that Richard was a licensed real estate broker was pertinent to their HRS chapter 480 claim and that the trial court erred in excluding that evidence and dismissing the chapter 480 claim. Appellants assert that had Pillard been informed that Richard was a broker Pillard would have "scrutinized the transaction with much greater care,"[13] and that, under HRS § 480-12 they could have rescinded the contract and recovered all their money.

*Ai v. Frank Huff Agency, Ltd.,* 61 Haw. 607, 607 P.2d 1304 (1980), established four elements essential to recovery under HRS § 480-13 for a violation of HRS § 480-2. Those elements are:

(1) [A] violation of chapter 480; (2) injury to plaintiff's business or property resulting from such violation; (3) proof of the amount of damages; and (4) a showing that the action is in the public interest or that the defendant is a merchant.

*Id.* 61 Haw. at 617, 607 P.2d at 1311. It appears from the record that the excluded evidence could have helped Appellants establish a *prima facie* case according to *Ai* and should not have been excluded. On remand, Appellants should be allowed to attempt to set forth for the jury the elements prescribed by *Ai.*[14]

V.

Appellants claim they were the prevailing party and the trial court erred in not awarding them their costs. Inasmuch as we are

---

[12] Section 480-2 (1985) reads as follow:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

[13] We cannot help but note, however, that Pillard had the property appraised on November 19, 1980, one month after the option was executed, for $175,000, indicating that he did scrutinize the transaction with more than ordinary care.

[14] Appellants attempt to buttress their argument by attaching to the briefs a settlement agreement executed by Richard Young (Richard) and the Department of Commerce and Consumer Affairs, which resolved a complaint lodged against him with that department by Pillard and based upon Richard's action in this case. The attachment is inappropriate and in blatant violation of Rule 28(b) (9) of the Hawaii Rules of Appellate Procedure (1984), which prohibits anything not part of the record from being appended to the opening brief.

remanding this case, we need not rule on that question. After completion of the case on remand, the lower court may exercise its discretion to award costs. *See Kamalu v. Lovell,* 5 Haw. 181 (1884).

## VI.

We affirm the dismissal of Beclar's tortious interference with the contract claim. We vacate the directed verdict regarding the breach of option claims, the dismissal of Beclar's HRS chapter 480 claim, the awards to the Youngs and to Pillard and Beclar, the relevant portions of the November 3, 1986 judgment reflecting the foregoing, and the ruling regarding costs, and remand this matter to the trial court for further proceedings consistent with this opinion.

*Edward C. Kemper (Kemper & Watts* of counsel) for Pillard and Beclar.

*Thomas James Lane, Jr.,* for the Youngs.