SHORES, Justice.
On December 30,1976, the First Alabama Bank of Birmingham (the bank) filed in the Circuit Court of the Tenth Judicial Circuit a petition for partial settlement of Ingalls Trusts B, C, D, E, and F. Thereafter, claims were filed on behalf of the sons of one of the primary beneficiaries of those trusts, Elesabeth Ingalls Gillet, and the daughters of the other primary beneficiary, Barbara Ingalls Shook, asserting that the Boykin boys and Shook girls were present beneficiaries of the Ingalls trusts. Those proceedings resulted in the opinion by this Court styled Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190 (Ala.1978).
In that case, this Court held that Mrs. Shook and Mrs. Gillet are entitled to receive distributions of principal as well as income of the various trusts and are presently the sole primary beneficiaries of the Ingalls trusts.
Thereafter, the trial court set the matter for hearing with respect to the petitions and requests for partial settlement and approval of the accounting of the trustees of the Ingalls trusts. M. Wayne Wheeler, as guardian ad litem for the unborn descendants of Robert I. Ingalls, Sr., filed an answer which contained a prayer for affirmative relief charging the trustees with breach of fiduciary duty in making discretionary payments to Mrs. Shook and to Mrs. Gillet under Trusts E and F.
By order dated April 23, 1979, the trial court approved the accounting of the trustees including a full and final distribution of Trust C and the discharge of the trustees with respect to Trust C. From that order, Wheeler, as guardian ad litem, and Samuel Marks Boykin, III, appealed. Boykin v. First Alabama Bank, 384 So.2d 10 (Ala.1980).
*49 At this stage of the proceeding, Mrs. Shook filed a motion for division of the Ingalls trusts. Richard S. Riley, guardian ad litem for one of the Shook girls, the other having reached majority, filed a motion in opposition to Mrs. Shook’s motion for division as did attorneys for the Boykin boys. Wheeler filed an objection as guardian ad litem for the unborn heirs of Robert I. Ingalls, Sr. Mrs. Gillet then filed a cross-claim and counterclaim asking for termination of her half of the Ingalls Trusts B, D, E, and F.
A hearing was held on the merits of the Shook and Gillet motions, and at the conclusion of the hearing, the trial court entered its order which is appealed from here. That order includes the following findings:
(1) That the court had jurisdiction of the motions of Mrs. Shook and Mrs. Gillet.
(2) That all parties had proper notice and had joined issue on the motions and were presently represented in court and had reasonable opportunity to present evidence.
(3) That Mrs. Shook and Mrs. Gillet are both over the age of thirty-five years and are competent.
(4) That all four trusts contain express language providing authority for both a division of the trusts into two equal shares and, as to the one-half share of each trust allocable to Mrs. Gillet, for a termination of such one-half shares. All four trusts contain language clearly contemplating early termination, possible division and exercise of broad discretion by the then trustees or the then current income beneficiaries (Mrs. Shook and Mrs. Gillet). The applicable test for exercise of discretion was whether the action was in the best interests of the then current income beneficiaries of the trusts as opposed to consideration of the interests of any contingent or unborn beneficiaries.
(5) That there was no evidence of any fraud, bad faith, misbehavior, misconduct, arbitrariness, or abuse of authority on the part of Mrs. Shook, Mrs. Gillet, or the bank.
(6) That all trustees concur in the desire to have the four trusts, B, D, E, and F, divided into two equal shares. With respect to Mrs. Gillet’s request to have a terminating distribution made to her of her own one-half share, such request was not opposed by the remaining trustees and current income beneficiaries.
(7) That the current income beneficiaries (Mrs. Shook and Mrs. Gillet) and trustees, in the light of the ongoing litigation, acted in a reasonable and prudent manner in seeking court approval of the actions sought by the Gillet and Shook motions.
(8) That it was in the best interest of the parties, including both present living beneficiaries and any contingent beneficiaries and the trustees, that the Gillet and Shook motions be granted.
(9) That the court would exercise its equity jurisdiction to appoint successor trustees with respect to the divided trusts, as invoked by Mrs. Shook and Mrs. Gillet.
The court then appointed Mrs. Shook and the bank as trustees of the one-half shares set aside for Mrs. Shook and appointed Mrs. Gillet and the bank for the one-half shares of each trust set aside for Mrs. Gillet.
Each of these trust instruments has been before this Court before. Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190 (Ala.1978). Each sets up a trust for the benefit of Elesabeth Ridgely Ingalls and Barbara Gregg Ingalls, whom the Court held in Wheeler to be the primary beneficiaries thereunder. The pertinent provisions of Trusts B, D, E, and F with which we are concerned on this appeal are as follows:
Trust B — “It is contemplated as and when each such beneficiary [Shook and Gillet] shall attain the age of twenty-one years there may properly be distributed to him or her twenty-five per cent of his or her proportionate share of said trust estate, and as and when he or she shall attain the age of twenty-eight years, an additional twenty-five per cent thereof, and as and when he or she shall attain the age of thirty-five years, the remaining fifty per cent thereof, but the Trustees shall not be bound by said schedule of distribution *50 and may vary said ages and the percentages distributed. . . . ”
Trust D- — The provision for distribution is identical to that contained in Trust B above.
Trust E — “(n) The Grantor has considered carefully all of the provisions of the within Trust Indenture with counsel and declares the trust hereby created to be irrevocable; PROVIDED, however, that the adult beneficiaries hereunder at any time entitled to benefits herefrom, or in the event there are no adult beneficiaries, then the legally appointed guardians of any minor beneficiaries, shall have the power, with the consent and approval of the Trustees, to alter or amend this Indenture of Trust, or to terminate same subject to the proviso hereinafter contained, by an instrument in writing signed by them and approved by and delivered to the Trustees; AND PROVIDED FURTHER that no alteration or amendment shall be made which shall result in the withdrawal from the trust of any part of said trust estate except as hereinbefore provided for, or in any change of the enjoyment of the trust property or the proportionate share of any beneficiary thereof. . . . ”
Trust F — The provisions contained in Trust F are identical to those contained in Trust E above.
Both Trusts B and D contain the following language as well:
“Without limiting the discretion of the Trustees, they are hereby authorized, if in their sole judgment they deem it advisable, to distribute to any beneficiary from time to time sharing in the benefits of the within trust at any time after he or she shall have attained the age of twenty-one years, such part or parts of the proportionate share of the principal of said trust held in trust for him or her under the provisions of Section (b) hereof, as the Trustees may from time to time deem such beneficiary capable of wisely using or managing.”
Both Trust B and Trust D provide for a contemplated schedule of distribution of principal at the attainment of various ages (twenty-five per cent at age twenty-one, twenty-five per cent at age twenty-eight, and the remaining fifty per cent at age thirty-five); both beneficiaries, Mrs. Shook and Mrs. Gillet, are presently over the age of thirty-five. It is apparent, then, that had the trustees adhered to the contemplated schedule of distribution, these two In-galls trusts would have been fully distributed by now, but nothing in the instrument compels distribution to each beneficiary upon age thirty-five.
Each trust also contains the following language:
“In the event that any principal distribution is made to any beneficiary under the foregoing provisions of the within Section (c) hereof [Section (d) in the case of In-galls Trust D], the Trustees shall at the same time set apart for the benefit of all other beneficiaries then sharing in the benefits of said trust estate, in equal shares, per stirpes, other property constituting a part of the principal of said trust estate equivalent in value for each beneficiary per stirpes to the value of the property so distributed, and the Trustees shall thereafter hold such other property so set apart for each such other beneficiary in trust for the benefit of such other beneficiary as provided in Section (d) hereof.”
The question before us is whether or not the trial court erred in construing the trusts to permit termination.
The discretionary provisions for early termination are contained in each trust. In each instance, an early termination of the trusts may be had only with the consent of the trustees. The trustees of Trust B are Mrs. Gillet, Mrs. Shook, and First Alabama Bank; First Alabama Bank is the sole trustee of Trust D; Mrs. Gillet and the bank are sole trustees of Trust E; and Mrs. Gil-let, Mrs. Shook, and the bank are co-trustees of Trust F.
Trusts B and D contain no provisions relating to the vote necessary among trustees. Trusts E and F contain a provision in paragraph (i) of each which states:
*51 “So long as there shall be more than two trustees acting hereunder the action of a majority of them shall control and be binding upon the trustees hereunder. After there shall be only two trustees acting hereunder, they shall act upon the concurrence of both.”
The appellants assert that Trust B may be terminated only upon the concurrence of all three trustees; Trust D may be terminated only with the bank’s consent, as the sole trustee; Trust E may be terminated only upon the unanimous consent of Mrs. Gillet and the Bank; and Trust F may be terminated only if a majority of the trustees, consisting of Mrs. Gillet, Mrs. Shook, and the bank, consent.
Some of the appellants contend that because the trust instruments do not specifically provide for a division of the trusts, the court had no power to order a division and contend that the power and .authority to terminate the trusts do not carry the power to divide. The trial court found that Trusts B and D did contain express language specifically recognizing the discretion of the trustees to make division of the trusts and to make partial terminating distributions. We must agree.
As we have previously indicated, Trusts B and D unequivocally provide for distribution of the entire corpus to Mrs. Shook and Mrs. Gillet at any time after they reach age thirty-five. Clearly, this power to totally distribute and thus cut off any contingent interests that the appellants might have in these trusts would permit a division and termination of the same.
Trusts E and F contain provisions which would allow the current income beneficiaries, Mrs. Shook and Mrs. Gillet, to alter the trusts; to amend the trusts; and to terminate the trusts. We must agree with the trial court that a simple division of the trusts into two equal shares falls within the powers of the current beneficiaries with the consent of the trustees. The following appears at 89 C.J.S. Trusts § 87(c)(2) (1955) at 892:
“Conversion of single trust into separate trusts. Under a reservation of power to alter a trust, the grantor and beneficiaries have been held empowered to convert a single trust into separate trusts for each beneficiary. Particular instruments amending the deed of trust to this effect have been held not open to the objection that the subject of the trusts was not adequately defined; and the fact that the trusts are kept in one fund does not necessarily defeat the intention of the parties and require the conclusion that there is but a single trust.
“Amount or proportion received. If a settlor who reserves the right to change or modify the amount or proportion to be received by any beneficiary can only reduce the amount of a share to a nominal or negligible amount, a beneficiary whose share is completely abolished cannot obtain relief in a court of equity; so, in effect, a reservation of the right to modify the amount or proportion each beneficiary is to receive includes the power to modify it so that one beneficiary receives no part of the trust estate.”
It is quite clear that the trusts involved here vest the current income beneficiaries with the right to alter, amend, or terminate the trusts with the consent of the trustees. The appellants, all of whom are conceded to be contingent beneficiaries, cannot complain when this power is exercised.
All of the appellants contend that the record is devoid of any evidence that the bank in its capacity as trustee has consented to the division and termination as ordered by the trial court. While it is true that there is no written specific consent signed by each of the adult beneficiaries and the bank as trustee to the division of the trusts into two equal shares and the termination of one share, the record is replete with evidence which supports the trial court’s conclusion that each of these parties has, in fact, consented. If there were any doubt that such is the case, that doubt is dispelled by express declarations of consent contained in the bank’s briefs in this appeal. The bank • took no appeal from the trial *52 court’s finding that it had, in fact, consented to the termination of the trusts, and it, therefore, is from that point forward es-topped to deny that it had, in fact, consented.
While we agree with the appellants that the bank has an obligation under the trust instruments to exercise the judgment and discretion vested in it by the settlor, and cannot shirk that responsibility by passing the decision on to someone else, or to a court, we do not believe, given the context in which this issue arose in this litigation, that the bank was attempting to pass its responsibilities in this regard on to the court. It must be remembered that the bank invoked the court’s jurisdiction for the purpose of the approval of an accounting and a partial settlement of the trusts. Mrs. Shook filed her motion for division in that proceeding, and Mrs. Gillet subsequently filed her petition for termination. The court, having already acquired jurisdiction, proceeded to a hearing on these motions, with the active participation of the bank at all stages and, indeed, of all the parties to this litigation, and only after a full and complete hearing on these motions, entered its order, the subject of this appeal. We cannot agree with the appellants that in this context the bank has withheld or failed to give consent to the termination of these trusts within the meaning of the discretionary termination provisions thereof.
We have carefully considered all matters raised by the various parties to this appeal and are convinced that the judgment appealed from is due to be affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES and BEATTY, JJ., concur.