Terry SYKES, Plaintiff-Appellee,

v.

Roy McDOWELL, Individually & as Sheriff of Etowah County, Alabama, Defendant-Appellant.

No. 85–7262.

United States Court of Appeals, Eleventh Circuit.

April 15, 1986.

predicate offense. *Lewis, supra.*

Donald R. Rhea, George C. Hawkins, Gadsden, Ala., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this case, we affirm the award of damages to a deputy sheriff fired because of activities protected by the First Amendment to the Constitution of the United States.

## I.  FACTS

On October 1, 1977, the Etowah County Sheriff's Department employed Terry Sykes as a "road deputy."  On August 30, 1980, Roy McDowell was appointed sheriff to fill a vacancy created by the death of the previous sheriff.  In October, 1981, Sheriff McDowell called Sykes to his office and accused Sykes of publicly making derogatory remarks about him.  In October, 1981, and in April, 1982, McDowell discussed with Sykes what McDowell saw as Sykes's lack of political support for McDowell. McDowell told Sykes that he should get on McDowell's side in the upcoming election. Sykes disclaimed any interest in political activity and told McDowell that he was not supporting anyone and would like to be left out of politics and simply to be a deputy sheriff.  In the April, 1982, conversation, McDowell told Sykes that Sykes did not have any constitutional rights while he worked for McDowell.  McDowell also told Sykes that "several of them" were going to be fired and Sykes "would be one of them" if he did not find new friends.

Sykes also had several conversations with Major Tinsley of the sheriff's office concerning his lack of support for McDowell.  Major Tinsley accused Sykes of being a friend to Jack Partee and Harold Lockridge, employees with apparent inten-

Hudson, Inzer, Suttle, Swann & Stivender, P.A., James S. Sledge, William D. Hudson, Gadsden, Ala., for defendant-appellant.

tions of running against McDowell. Major Tinsley also threatened to fire four or five persons, including Sykes. In June, 1982, Major Tinsley asked Sykes to sign a newspaper advertisement for McDowell's campaign. Sykes refused. When Sykes refused again the next day, Tinsley commented, "We've got some permanent openings in the jail."

In the middle of October, 1981, Sykes began receiving large amounts of jail duty. Sheriff's Department deputies considered jail duty to be punitive, or at least distasteful duty. Sheriff McDowell ordered Kirby Johnston, who is in charge of assignments to the jail, to assign Sykes to jail duty as much as possible. Sheriff McDowell's orders were "to keep him off the road, to keep him out of contact with people, that he might politic against [McDowell]." McDowell told Johnston that he suspected Sykes was for Jack Partee for sheriff.

On June 22, 1982, Johnston told Sykes to report to jail duty the next day on the first shift for an indefinite period of time. The general rule regarding jail duty was to rotate road deputies equally. Because he had performed large amounts of jail duty for the preceding several months, Sykes refused to report to the jail for duty.

On June 23, 1982, Sykes reported to work on the second shift. Major Tinsley ordered him to report to the jail for an indefinite period of time. Sykes replied that "until it was equally distributed among all the deputies in the department, instead of just a certain few," that he was not going to work at the jail. Major Tinsley then fired Sykes.

Sykes appealed his firing to the Etowah County Personnel Board (ECPB). The ECPB held that Sykes's dismissal was improper because Alabama law required the sheriff, rather than a subordinate officer, to fire a deputy. After receiving this decision from the ECPB, McDowell personally fired Sykes. Sykes appealed this firing to the ECPB. The ECPB again ruled in Sykes's favor, holding that McDowell was without authority to reopen the matter once the firing had initially been ruled improper.

McDowell filed a petition for writ of certiorari to the circuit court. The circuit court reversed the ECPB decision, holding that the sheriff could correct the procedural defect that rendered the first firing improper. Because the Board had earlier found sufficient grounds for the firing, the circuit court disposed of the case without remanding to the ECPB.

On Sykes's appeal contesting the jurisdiction of the circuit court, the Court of Civil Appeals affirmed the circuit court's exercise of jurisdiction. The Alabama Supreme Court denied Sykes's petition for writ of certiorari.

## II. PROCEDURAL HISTORY

While the state appeals were pending, Sykes filed this action in the district court claiming a violation of his first amendment rights of freedom of speech and association. The court submitted the case to the jury with special interrogatories.[1] The jury returned a $99,054.93 verdict for Sykes as compensatory damages. This compensatory damage award included $60,-000 for emotional distress, awarded against

---

**1.** Question 1:

Do you find from a preponderance of the evidence that Terry Sykes, while employed as an Etowah County deputy sheriff during Sheriff Roy McDowell's campaign seeking election to his first full term as sheriff of Etowah County, engaged in protected first amendment conduct with respect to the sheriff's race which was not favorable to Sheriff McDowell's election effort and which was known to Sheriff McDowell before Deputy Sheriff Sykes was discharged as an employee of the Etowah County Sheriff's Department?

Question 2:

Do you find from a preponderance of the evidence that Terry Sykes' protected first amendment conduct was a substantial or motivating factor in Sheriff McDowell's decision to discharge him?

Question 3:

Do you find from a preponderance of the evidence that Sheriff McDowell would have reached the same decision to discharge Deputy Sheriff Terry Sykes even in the absence of Sykes' first amendment protected conduct? Questions 4–10 omitted.

McDowell in his official capacity. The jury also awarded $15,000 to Sykes in punitive damages against McDowell in his individual capacity. Thus, the jury's total damages awarded to Sykes were $114,054.93. The district court also ordered Sykes reinstated and awarded him attorney's fees.

## III. CONTENTIONS

McDowell argues that this case should have been dismissed at the pleading stage on the basis of *res judicata.* If the suit properly survived the bar of *res judicata,* then McDowell argues that it should not have been submitted to the jury; submission to the jury of Interrogatory 1 indicates that the district court did not determine that Sykes had alleged a first amendment protected activity. McDowell argues that because Sykes disavowed interest in supporting anyone politically, he did not engage in protected activity. Additionally, McDowell contends that the damages award was excessive.

We must decide four issues in this appeal. First, under 28 U.S.C. § 1738, did the adjudication in the Alabama state court system of the procedural issue of Sheriff McDowell's authority to fire Sykes bar litigation in federal district court of the merits of the firing?

Second, was the district court's submission to the jury of the question whether Sykes engaged in first amendment protected speech error?

Third, assuming the district court independently analyzed the legal status of Sykes's speech, did the court err in concluding that Sykes engaged in first amendment protected speech?

Fourth, were the punitive damages awarded by the jury excessive?

## IV. RES JUDICATA

McDowell contends, because Sykes litigated in the Alabama courts, Title 28

U.S.C. § 1738 precludes Sykes from bringing this suit. Under 28 U.S.C. § 1738, federal courts are required to give full faith and credit to judicial proceedings in the state courts. Section 1983, Title 42 U.S.C. claims are subject to the same rules of preclusion as any other claims. *Allen v. McCurry,* 449 U.S. 90, 97–98, 101 S.Ct. 411, 416–17, 66 L.Ed.2d 308 (1980). This court has held that a prior state court affirmance of a state administrative ruling is entitled to *res judicata* and collateral estoppel effect in a subsequent federal civil rights action, if the party litigated the claim in the prior state court proceedings. *Casines v. Murchek,* 766 F.2d 1494, 1499 n. 9 (11th Cir.1985); *Gorin v. Osborne,* 756 F.2d 834 (11th Cir.1985).

The preclusive effect that the district court must accord depends on what preclusive effect Alabama law would accord the state court proceedings, and on whether Sykes litigated the constitutional issues surrounding his dismissal within the meaning of *Casines.* To determine these questions, we must decide what issues were litigated in the Alabama state courts.[2]

After McDowell's personal firing of Sykes, the ECPB held that the sheriff lacked authority to cure an invalid firing. McDowell filed a petition for writ of certiorari to the circuit court, which held that the ECPB erred in concluding that Alabama law prevented the sheriff from curing a procedural defect in an earlier firing. The circuit court deferred to the ECPB's original determination that Sykes's conduct justified his dismissal. Sykes made an oral motion to intervene in McDowell's appeal to the circuit court. McDowell concedes that the appeals courts, which upheld the circuit court, only adjudicated the procedural question raised by Sykes: whether the writ of certiorari was an available remedy.

McDowell argues that under Alabama law, Sykes is barred from further litigation about his firing. McDowell cites *Dominex,*

**2.** The sources for this discussion are the case record, including the order of the circuit court; the parties' explanations; and the appellate opinion in *Etowah County Personnel Board, et*

*als. v. Roy McDowell,* as Sheriff of Etowah County Alabama, 437 So.2d 563 (Ala.Civ.App. 1983). The record of the ECPB proceedings is not available.

*Inc. v. Key,* 456 So.2d 1047 (Ala.1984); *Brooks v. Peoples National Bank in Huntsville,* 414 So.2d 917 (Ala.1982); and *ABC Truck Lines v. Kenemer,* 247 Ala. 543, 25 So.2d 511 (1946) for the proposition that under Alabama law, *res judicata* applies to issues that could have been litigated.

Under Alabama law, a circuit court may review whether evidence supports the factual findings of a personnel review board and whether the board has made errors of law. *See Phelps v. Public Commission,* 46 Ala.App. 13, 237 So.2d 499 (1970); *Baker v. Denniston-Boykin Co.,* 245 Ala. 407, 17 So.2d 148 (1944). Sykes therefore could have appealed the ECPB's adverse ruling to the circuit court raising his constitutional objections to his firing. The ruling of the ECPB, however, was favorable to Sykes on a threshold issue: whether McDowell could cure the procedural defect. Sykes's participation in the case at the circuit court was limited to urging the court to affirm the ECPB's procedural disposition. The final order of the circuit court reflects that the case before it was one of procedure. The court recites that the board had earlier "determined that the conduct of Terry Sykes constituted grounds for discharge" but does not make a finding that the grounds for the firing were proper. In contrast, the circuit court holds that the board "properly" determined the procedural question in the first suit. The absence of any indication that the circuit court considered the grounds of Sykes's firing, however, does not dispose of the matter. McDowell argues that Alabama law bars Sykes from litigating the grounds of his firing because jurisdiction of the circuit court over ECPB decisions allowed him to litigate the grounds in the circuit court.

This argument ignores the limited role Sykes played as an intervenor in McDowell's appeal to the circuit court. To adopt this argument, we would in effect hold that

Sykes was required to appeal the merits portion of the ECPB's holding and assert his constitutional claims when McDowell appealed the question of his authority to fire Sykes. We are not persuaded that Alabama cases demonstrate that Alabama state courts would be bound by this circuit court decision on the procedural issue in a suit brought by Sykes alleging a constitutional violation. The most recent of the Alabama cases on preclusion, *Dominex,* summarizes the four elements of *res judicata:* (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits. 456 So.2d at 1054 (quoting *Wheeler v. First Alabama Bank of Birmingham,* 364 So.2d 1190, 1199 (Ala.1978), *aff'd* 385 So.2d 47 (Ala.1980). The first element is met; a court acted. The prior judgment, however, was not on the merits of Sykes's constitutional claim. The order, as quoted above, did not state that the holding by the ECPB was proper. It merely recited that the ECPB had found grounds for discharge. Third, the parties to both suits are not substantially identical. The appellee in McDowell's appeal to the circuit court was the ECPB. Sykes was merely an intervenor.[3] Finally, we are not persuaded that under Alabama law, the two cases involve the same cause of action. McDowell's cause of action sought a declaration of his authority as sheriff to fire an employee. Sykes's cause of action is his constitutional claim. Alabama law does not require the conclusion that an intervenor in a case regarding a narrow procedural issue heard on certiorari must frame a substantive claim in the same suit, or be barred.

The principle enunciated in *Brooks* is that a litigant who failed to bring a compulsory counterclaim is barred from litigating the counterclaim in a later suit. 414 So.2d at 920. We see no indication that the Alabama law of *res judicata* required Sykes to

---

**3.** Because Sykes's motion to intervene was orally made, the exact grounds supporting the mo-

tion are not reflected in the record.

litigate his claim as a counterclaim as part of the sheriff's certiorari petition.

In addition, precedent on the preclusive effect of state court judgments does not place a burden to appeal favorable administrative holdings on a federal rights-holder. In *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Supreme Court held that a litigant who had pursued state court review of an adverse administrative determination could not relitigate the case in federal court under Title VII. As support for the holding that a choice to litigate in state court precluded relitigation in federal court, the Court noted that Title VII did not require a claimant to pursue an unfavorable state administrative action in state court. *See* 456 U.S. at 469, 102 S.Ct. at 1891. The Court also noted that, because Title VII preserved the federal court forum after decisions by the Equal Employment Opportunity Commission, it was "clear that unreviewed administrative determinations by state agencies ... should not preclude ... review even if such a decision were to be afforded preclusive effect in a State's own courts." *See* 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7.

The teaching of *Kremer* and *Gorin* is that federal courts must accord preclusive effect to issues litigated and decided on the merits, even though the review on the merits is sharply limited. *See Casines*, 766 F.2d at 1499 n. 9 (construing *Gorin* and *Kremer*). The rule that even limited review counts as review does not control Sykes's case; he did not bring his case in state court and did not receive any merits review. We do not read *Kremer* to bar the litigation of claims on their merits because the party has been forced to litigate threshold procedural questions in the state court.

Finally, the policy of section 1738—to give finality to state court proceedings—is not implicated by litigation of Sykes's constitutional claim in federal court. The case that was litigated in Alabama state courts was McDowell's authority as sheriff to reinstate a dismissal by acting through correct procedure. Sykes's cause of action—

merits of his discharge—was not appealed and was not litigated. The overriding purpose of *res judicata* is to avoid relitigation of the same cause of action under new legal theories and thereby to prevent inconsistent decisions. *Allen v. McCurry*, 449 U.S. at 94, 101 S.Ct. at 414–15. In the federal-state context, one purpose of *res judicata* doctrine is to "promote the comity between state and federal courts" that has been recognized as a bulwark of the federal system. 449 U.S. at 96, 101 S.Ct. at 415–16. The interest of comity is served by the preclusive effect that this court would accord, and indeed does accord implicitly, to the Alabama circuit court's determination that McDowell had the authority to fire Sykes. Because Sykes's case had not proceeded beyond the administrative level, the interests of comity between state and federal courts are not implicated.

## V.  FIRST AMENDMENT

On the first amendment claim, McDowell contends that the district court erred by submitting to the jury the question of whether Sykes engaged in first amendment protected conduct. In response, Sykes points out that McDowell did not raise an objection to the submission of the question to the jury at any time. Sykes also contends that the district court's denial of McDowell's motions for directed verdict and for new trial constituted an implicit determination that the conduct was protected. Thus, Sykes argues that the submission of the issue to the jury did not prejudice McDowell's rights.

Whether certain activity or speech is protected by the first amendment is a question of law for the district court. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Schneider v. City of Atlanta*, 628 F.2d 915 (5th Cir. 1980). The district court should have determined that issue without submitting it to the jury. The question whether Sykes was discharged because of the speech was proper for submission to the jury. We agree with Sykes, however, that by denying the motions for directed verdict and for

new trial, the district court implicitly decided that the activity was protected under the first amendment.

The test, since no objection was made, is plain error. Judicial notice of plain error is confined in this circuit to "error that has seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Liner v. J.B. Talley and Co., Inc.*, 618 F.2d 327 (5th Cir.1980). This case is unlike *Schneider v. City of Atlanta*, where the entire jury instruction reflected a fundamental misapprehension of first amendment law and left the jury free to fashion law without constraint by the principles of *Pickering. See Schneider*, 628 F.2d at 918. We note that by submitting Interrogatory No. 1, the court incurred the risk of creating an uncorrectable error. If the jury had decided against Sykes, the district court could not have determined whether it did so because it concluded the speech was not legally protected—a determination not within the jury's competence. Under the circumstances presented, by submitting the issue to the jury, McDowell could only gain an undue advantage. McDowell could have won the lawsuit on an issue that never should have been submitted to the jury. That did not occur. Plain error has not been demonstrated.

The second aspect of McDowell's argument is that the district court erred as a matter of law in reaching its implicit conclusion that Sykes engaged in protected speech activity. The gist of the argument is that Sykes consistently denied being politically involved; therefore, he was not engaged in any protected activity. McDowell contends, for instance, that the record contains no evidence that Sykes supported or associated with Jack Partee; therefore, no freedom of association claim has been shown. McDowell also argues that even if the record shows accusations by Sheriff McDowell against Sykes because Sykes was speaking politically in associating with Partee, Sykes's denials of the accusations, which he repeated at trial, make him ineligible for the protection of the first amendment. McDowell also argues that evidence showing a pattern of patronage politics is irrelevant to a first amendment case.

■ The record reveals that Sykes was firm in avowing his right not to speak in the county about political affairs. He asserted his "constitutional right" not to be coerced into "becoming on [McDowell's] side." He told Major Tinsley, in response to an accusation that his friends were running for sheriff, that he hoped he was friends with men he had worked with for eight hours a day. He refused to sign a newspaper ad supporting Sheriff McDowell. This he did in the face of explicit threats of retaliation. The expressive content of these refusals to speak as ordered, by disavowing friendships and signing ads supporting McDowell, is clear. In addition, the right not to send messages under state coercion is a first amendment protected right. *See, e.g., Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (right to refrain from speaking). A public employee who positively asserts the right not to speak when ordered to support his employer is within the protection of the first amendment. *Berry v. Bailey*, 726 F.2d 670 (11th Cir.1984) does not hold otherwise. In *Berry*, this court held that refusal by a deputy to drop charges against political friends of the sheriff was not protected first amendment activity. The *Berry* court recognized that a firing for a different political affiliation or for refusal to support the sheriff politically does implicate protected first amendment interests. *See Berry*, 726 F.2d at 673.

■ McDowell also argues that Sykes was discharged for insubordination—his refusal to report for jail duty. McDowell cites cases, such as *Berry*, holding that, even though refusal to obey an order takes the form of speech, it is not a protected activity. That rule is not on point here. Sykes's claim is not that his refusal to report to jail duty constituted speech, but that McDowell fired him for other conduct, which the first amendment protects. When an employee engages in constitutionally protected conduct, "it is ... a question of fact whether [he] was constructively dis-

charged because of it." *Schneider*, 628 F.2d at 920. The jury has found that it was Sykes's protected conduct that caused McDowell to fire him. As earlier noted, this was a proper jury issue.

We hold that Sykes engaged in protected first amendment activity and that submitting the protected speech issue to the jury did not prejudice McDowell's rights.

## VI. DAMAGES

Citing *Wilson v. Taylor*, 733 F.2d 1539 (11th Cir.1984), McDowell argues that the testimony at trial does not support an award of $60,000. In *Wilson*, the court determined that $100,000 for fourteenth amendment violations was excessive and that the proper award should have been $5,000 for each violation. McDowell argues that the evidence on mental anguish and emotional distress is so minimal that the award of $60,000 must be considered grossly excessive.

■ A court's refusal to grant a new trial on the grounds of inadequate or excessive damages is a matter within the sound discretion of the district court. It should be overturned only in exceptional circumstances. *Wilson*, 733 F.2d at 1548. "The power of an appellate court to review the excessiveness of a verdict is extremely limited," and "[g]reat caution should be exercised before the appellate courts interfere." *Lehrman v. Gulf Oil Corporation*, 500 F.2d 659, 671 n. 59 (5th Cir.1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975). A jury verdict may be vacated as excessive only if it is "so large as to shock the conscience." *Wiley v. Stensaker Schiffahartsges*, 557 F.2d 1168, 1172 (5th Cir.1977).

McDowell's comparison with *Wilson*, in which the emotional distress award was found excessive, is unpersuasive. "Comparison of verdicts rendered in different cases is not a satisfactory method for determining excessiveness *vel non* in a particular case and ... each case must be determined on its own facts." *Wiley*, 557 F.2d at 1172 (quoting *Fruit Industries,*

*Inc. v. Petty*, 268 F.2d 391, 395 (5th Cir. 1959)).

■ The record does not support McDowell's assertion that the only evidence to support a claim for the damage award was that Sykes was "worried because he was not able to find a job." Sykes testified to a number of adverse effects of the firing. Sykes's finances were cut by half. He suffered embarrassment among his peer group of other law enforcement officers. In a small community "where each resident knows the neighbors," the humiliation of a public firing is evident. *See Baskin v. Parker*, 602 F.2d 1205, 1210 (5th Cir.1979). We hold that the damage award is not excessive.

## VII. CONCLUSION

We hold that the administrative proceedings in which Sykes was involved did not bar him from further litigation in federal court. We also hold that even though the question of whether speech is protected is a legal question for the district court, submitting the question to the jury did not constitute plain error, in this case. Finally, we hold that the damages awarded by the jury are not clearly excessive. The judgment of the district court is affirmed.

AFFIRMED.