Ronald CALDEIRA, Plaintiff–Appellant,

v.

COUNTY OF KAUAI, et al.,
Defendants–Appellees.

No. 87–2959.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 18, 1988.

Decided Feb. 2, 1989.

---

Robert A. Smith, Honolulu, Hawaii, for plaintiff-appellant.

Warren C.R. Perry, Lihue, Hawaii, for defendant-appellee County of Kauai.

Charles K.Y. Khim, Honolulu, Hawaii, for defendant-appellee Hawaii Government Employees' Ass'n.

Before CHAMBERS, O'SCANNLAIN and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Ronald Caldeira appeals from an adverse summary judgment in his civil rights action against his former employer and union. Caldeira alleged, pursuant to 42 U.S.C. § 1983, that his employer, County of Kauai ("County"), violated his constitutional rights when it terminated his employment. Caldeira also alleged his former union, Hawaii Government Employee's Association ("Union"), was liable as a co-conspirator with defendant County under 42 U.S.C. § 1985(3). The district court granted summary judgment in favor of both the County and the Union. We affirm.

I

FACTS AND PROCEEDINGS

Ronald Caldeira was hired as a lifeguard by defendant County in 1978. Caldeira held this position from 1978 until he was discharged on October 11, 1983. Caldeira alleged that beginning in late 1978 or early 1979, the County developed and engaged in a conspiracy to effect his discharge without just cause. Caldeira also alleged that defendant Union joined in this conspiracy with the County beginning in June 1980.

The gravamen of Caldeira's civil rights claim is that he had a substantive due process right to employment by virtue of the clause in a collective bargaining agreement which provided that, as a county employee, he would not be terminated except for proper cause. To substantiate his claim, Caldeira asserted twelve "episodes" of alleged wrongdoing by the defendants which were ostensibly designed to effect his ultimate discharge.

The district court approached the disposition of the defendants' summary judgment motion in terms of the alleged twelve "episodes." "Episodes" one through ten involved alleged wrongdoing by defendant County to develop a negative work record and hostile work environment for Caldeira in order to effect his eventual discharge. "Episodes" three through ten also involved wrongdoing by defendant Union, in which Caldeira claimed it conspired with the County by acquiescing in the scheme to effect his discharge by failing to represent him adequately and thereby promote the development of his negative work record and hostile work environment.

As the district court recognized, "episode" eleven was "the crux of [Caldeira's] section 1983 claims against defendant County." Excerpt of Record (ER) 78 at 3. It involved incidents occurring during the pool's closing in 1983, when Caldeira was ordered to do some yard and janitorial work. Because he considered this a demotion in his work status, Caldeira disobeyed these work orders. As a result, Caldeira was suspended and discharged by the County. Pursuant to the collective bargaining agreement with the County, defendant Union invoked the arbitration procedure and represented the plaintiff therein.

"Episode" twelve involved the alleged wrongdoing of the defendants to distort and misrepresent the record presented to the arbitrator to prevent Caldeira from having a fair hearing and thereby recover his job.

On January 15, 1985, the arbitrator found that the work orders were proper, Caldeira was insubordinate, and the County had just and proper cause to dismiss him. On July 16, 1985, Caldeira filed this action in the federal district court. On September 25, 1987, the Hawaii Fifth Circuit affirmed the arbitration decision.

On October 9, 1987, the district court granted defendants' motion for summary judgment. The district court judge, Harold M. Fong, ruled that he was precluded from considering "episode" eleven because the Hawaii state court had confirmed the arbitration award, making it binding upon the federal district court under the Full Faith and Credit Statute, 28 U.S.C. § 1738. Judge Fong concluded that once the "linchpin" ("episode" eleven) of Caldeira's §§ 1983 and 1985 causes of action was removed, "episodes" one through ten were not sufficient to sustain Caldeira's claims, as they were not the cause of Caldeira's discharge. Judge Fong then ruled that, as to "episode" twelve (the arbitration itself), Caldeira had presented no evidence from which a jury could infer the existence of a conspiracy between the two defendants.

Judgment was entered dismissing Caldeira's action on October 13, 1987. On October 26, 1987, the district court denied Caldeira's motion for reconsideration. Caldeira timely appeals.

## II

## ISSUES ON APPEAL

1. Did the district court err in giving preclusive effect to the Hawaii state court judgment upholding Caldeira's discharge?

2. Did the district court err in failing to find a conspiracy between defendant County and defendant Union?

## III

## STANDARD OF REVIEW

We review de novo a district court's ruling on the availability of res judicata both as to claim preclusion and issue preclusion. *Guild Wineries and Distilleries v. Whitehall Co.*, 853 F.2d 755, 758 (9th Cir.1988). If available, we review the district court's application of the doctrine for abuse of discretion. *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 60, 102 L.Ed.2d 38 (1988). A grant of summary judgment is reviewed de novo. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986).

## IV

## DISCUSSION

A. Preclusive Effect of State Proceedings

■ It is well established that, even in a suit under section 1983, 28 U.S.C. § 1738 requires federal courts give the same "full faith and credit" to the records and judicial proceedings of any state court that they would receive in the state from which they arise.[1] *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). It is equally well settled that 28 U.S.C. § 1738 requires federal courts give an administrative adjudication reviewed by a state court the same "full faith and credit" the adjudication would enjoy in the state's own courts. *Mack v. South Bay Beer Dist., Inc.*, 798 F.2d 1279, 1283 (9th Cir.1986) (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *McDonald v. City of West Branch,*

---

**1.** Title 28 U.S.C. § 1738 provides in pertinent part:

The records and judicial proceedings of any court of any … state … shall have the same

full faith and credit in every court within the United States … as they have by law or usage in the courts of such state … from which they are taken.

466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984)).[2]

While the Supreme Court has not directly addressed the issue of whether an arbitrator's decision that has been reviewed by a state court is entitled to preclusive effect, *see, e.g., Byrd,* 470 U.S. at 223, 105 S.Ct. at 1243 ("The question of what preclusive effect, if any, the arbitration proceedings might have is not yet before us ... and we do not decide it"), it has consistently held that an *unreviewed* arbitration decision does not preclude a federal court action. *See, e.g., McDonald,* 466 U.S. at 288–92, 104 S.Ct. at 1801–04; *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 742–45, 101 S.Ct. 1437, 1445–47, 67 L.Ed.2d 641 (1981); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 56–60, 94 S.Ct. 1011, 1023–25, 39 L.Ed.2d 147 (1974).

However, the considerations that motivated the Supreme Court to deny preclusive effect to unreviewed arbitration decisions are not present in a case like the one before us, which involves a reviewed arbitration decision. The Supreme Court has declined to create a common law bar to relitigation of unreviewed arbitration decisions, reasoning that because arbitration is not a "judicial proceeding" within the meaning of section 1738, preclusion is not statutorily required. *See McDonald,* 466 U.S. at 288, 104 S.Ct. at 1801. Here, in contrast, the plain language of section 1738 controls, requiring us to give the state court's determination preclusive effect. The state court's confirmation of the arbitration award constitutes a judicial proceeding for purposes of section 1738, and thus must be given the full faith and credit it would receive under state law. *See Rider v. Pennsylvania,* 850 F.2d 982, 994 (3d

Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988) (giving preclusive effect in a subsequent Title VII suit to a state court's review of an arbitrator's decision).

To determine whether the requirements of issue preclusion have been satisfied, this court must look to the law of the state in question. *Takahashi v. Board of Trustees,* 783 F.2d 848, 850 (9th Cir.), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986); 28 U.S.C. § 1738. If, under Hawaii law, Caldeira is precluded from litigating his claims in state court, he cannot pursue them in federal court unless the prior state proceedings did not provide him a full and fair opportunity to present his claims. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 480–81, 102 S.Ct. 1883, 1896–97, 72 L.Ed.2d 262 (1982).

### 1. Preclusion Under Hawaii Law

As the district court noted, the "linchpin" of Caldeira's section 1983 action rests on the allegation that defendant County terminated his employment "when no good cause existed therefore." ER 34 at 5. The district court concluded that this substantive due process claim had been raised and decided by the state circuit court. It held that Hawaii preclusion law would therefore prevent Caldeira from relitigating the claim in state court.

Under Hawaii law, as generally, three basic questions must be answered in the affirmative before "collateral estoppel," or issue preclusion, may be applied: "(1) Was the issue decided in the prior action identical with the issue presented in the present action? (2) Was there a final judgment on the merits in the prior action? (3) Was the party against whom the doctrine is assert-

---

**2.** The federal courts have frequently fashioned federal common law rules of preclusion where § 1738 does not apply. In the context of unreviewed administrative proceedings, issue preclusion has been upheld in subsequent lawsuits where the administrative agency acted in a "judicial capacity" in resolving disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate. *University of Tennessee v. Elliott,* 478 U.S. 788, 797–98, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) (quoting *United States v. Utah Constr. & Mining*

*Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966)); *Eilrich v. Remas,* 839 F.2d at 632. This common law rule of preclusion, however, has not been extended to arbitration hearings, "in part on the ground that arbitration cannot provide an adequate substitute for a judicial proceeding in protecting federal statutory and constitutional rights that § 1983 is designed to safeguard." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 223, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985).

ed a party or in privity with a party to the previous adjudication?" *Silver v. Queen's Hospital*, 63 Haw. 430, 436, 629 P.2d 1116, 1121 (1981) (citation omitted).

Isolating the alleged wrongful act is critical to the first inquiry—identity of the issue. In this case, a single event, the October 11, 1983 discharge, gave rise to both state and federal proceedings. Pursuant to the Union's collective bargaining agreement, Caldeira availed himself of an arbitration hearing to challenge the termination of his employment. After a two-day arbitration hearing, the arbitrator found that Caldeira was insubordinate in the face of reasonable and legitimate work orders, and that "proper and just cause" existed for the October discharge. CR 60 at 32. The state circuit court, in confirming the arbitrator's award, necessarily determined that proper cause existed for Caldeira's discharge due to insubordination. This was the identical issue raised by Caldeira in "episode" eleven of his federal claim. By invoking the Constitution and section 1983, Caldeira has merely presented a new legal theory upon which he seeks to recover. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 651–52 (9th Cir.1988); *see also Takahashi*, 783 F.2d at 851 (section 1983 action barred when it merely asks to look at contractual right of employment from a different angle). Because the same occurrence underlies both actions, the first prerequisite of issue preclusion is met.

Similarly, it cannot be seriously contested that the state court's confirmation of the arbitrator's award was anything but a final judgment on the merits. Confirmation of the arbitration decision constitutes an entry of judgment under Hawaii Rev. Stat. § 658–12. Section 658–12 provides:

> Upon the granting of an order confirming, modifying, or correcting an award, the same shall be filed in the office of the clerk of the circuit court and this shall constitute the entry of judgment. An appeal may be taken from such judgment as hereinafter set forth.

Furthermore, Hawaii Rev.Stat. § 658–14 specifies the effect of that judgment:

> The judgment entered in accordance with Section 658–12 has the same force and effect in all respects as, and is subject to all the provisions of law relating to, a judgment in an action; and it may be enforced, as if it had been rendered in an action in the court in which it is entered.

Finally, the third prerequisite of issue preclusion is easily satisfied. The same parties were involved in both the state and federal proceedings.

Appellant relies largely on *Bottini v. Sadore Management Corp.*, 764 F.2d 116 (2d Cir.1985), to support his proposition that arbitration proceedings are never entitled to preclusive effect in a subsequent federal proceeding, even where a state court has reviewed the arbitrator's decision. Such reliance is misplaced.

*Bottini* involved a building superintendent who was discharged for unsatisfactory job performance due, at least in part, to his absence from work on Sunday mornings while attending meetings of the Jehovah Witnesses. An arbitrator subsequently found good cause for the discharge. The arbitrator's decision was challenged by Bottini in state court. After his petition was denied, Bottini brought no further appeal. He then commenced a Title VII action in federal district court, alleging religious discrimination. That action was dismissed on res judicata grounds. On appeal, the Second Circuit reversed, holding that the state proceedings did not constitute a judgment on the merits of Bottini's Title VII action, and did not afford Bottini a full and fair opportunity to litigate his Title VII claim.

*Bottini* is clearly distinguishable from the instant case. Unlike Hawaii Rev.Stat. §§ 658–12 and 658–14, the New York statute involved in *Bottini*, Article 75, CPLR, allowing for review of an arbitrator's award, does not provide that confirmed arbitration awards have the effect of a state court judgment and may be enforced as such.

Furthermore, unlike the arbitration and state court proceedings in this case—each of which were concerned with whether

proper cause existed for Caldeira's discharge—neither the arbitration nor the state court proceedings in *Bottini* addressed the religious discrimination claim. *See also Rider*, 850 F.2d at 992 n. 12 (distinguishing *Bottini* on similar grounds).

### 2. Full and Fair Opportunity to Litigate

Before a person can be denied access to federal courts through the preclusive effect of a state court proceeding, it must be established that he received a "full and fair opportunity" to litigate his claim in the state proceedings. *Kremer*, 456 U.S. at 480–81, 102 S.Ct. at 1896–97; *see also Haring v. Prosise*, 462 U.S. 306, 317–18, 103 S.Ct. 2368, 2375, 76 L.Ed.2d 595 (1983) ("As a general matter, even when issues have been raised, argued, and decided in a prior proceeding, and are therefore preclusive under state law, '[r]edetermination of [the] issues [may nevertheless be] warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation'") (quoting *Montana v. United States*, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210 (1979)).

When determining whether a party received a full and fair opportunity to litigate an issue, the inquiry is whether the minimum due process requirements guaranteed by the fourteenth amendment are satisfied. The Supreme Court, in *Kremer*, explained this inquiry in the following manner:

> Our previous decisions have not specified the source or defined the content of the requirement that the first adjudication offer a full and fair opportunity to litigate. But for present purposes, where

we are bound by the statutory directive of § 1738, state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law.

456 U.S. at 481, 102 S.Ct. at 1897.

The minimal procedural requirements of the due process clause were clearly satisfied in this case. Caldeira had a "full opportunity to present [his contentions] on the record" during the state proceedings. *Kremer*, 456 U.S. at 483, 102 S.Ct. at 1898; *see also Rider*, 850 F.2d at 991–92 (due process requirements examined in light of both the arbitration and state court proceedings). Caldeira was represented by counsel during the course of the two-day arbitration hearing where he submitted documentary evidence and exhibits, called witnesses, cross-examined witnesses, and testified on his own behalf. His attorney objected to evidence on the record and submitted post-hearing briefs.

Caldeira was duly served with defendant County's motion for confirmation of the arbitration award, filed a memorandum in opposition to the motion, and made oral argument during a hearing before the state circuit court. He filed a motion for reconsideration of the order confirming the arbitration award, submitted an original as well as a supplemental memorandum, and made oral argument in support of the motion. This motion was subsequently denied.[3] Pursuant to Hawaii Rev.Stat. § 658–9, Caldeira filed a motion to vacate the arbitration award in which he argued

---

**3.** Caldeira objects to the summary manner in which the state court's confirmation order was rendered. Specifically, he draws attention to the fact that Hawaii Rev.Stat. § 658–13 requires only the arbitration agreement and the arbitrator's award be filed as the record in conjunction with a motion for confirmation. The record indicates, however, that the state court was presented with more than the collective bargaining agreement and the award before rendering its confirmation order. Nevertheless, as the Eleventh Circuit has recognized, "[t]he teaching of *Kremer* ... is that federal courts must accord preclusive effect to issues litigated and decided on the merits, even though the review on the

merits is sharply limited." *Sykes v. McDowell*, 786 F.2d 1098, 1103 (11th Cir.1986).

Caldeira similarly objects to the limited argument held on the County's motion for confirmation of the arbitration award. During oral argument on the County's motion, however, Caldeira elected only to argue that the County's motion was time-barred. Thus, Caldeira is hardly in a position to complain; he had adequate opportunity to challenge the arbitrator's award on a variety of other grounds. *See* Hawaii Rev.Stat. §§ 658–9 and 658–10. In any event, the subsequent motion for reconsideration, and argument held on that motion, squarely attacked the merits of the arbitrator's decision.

the award was procured by "corruption, fraud or undue means." This motion was denied for lack of evidence.

Still undaunted, Caldeira filed a petition for writ of mandamus, prohibition or certiorari to the Hawaii Supreme Court, on the assumption that this was his only means of seeking review of the state court's confirmation order. The petition was dismissed. Caldeira then appealed the denial of his motion to vacate, as well as the order confirming the arbitration award, to the Hawaii Supreme Court. This appeal was dismissed as untimely.[4] One might ask, "How many games must the defendant win before the match is finally over?"

It is overly apparent that Caldeira received a full and fair opportunity to litigate his claim as measured by minimal due process. He is thus barred from pursuing his section 1983 claims in federal court by the prior Hawaii proceedings.

### 3. "Episodes" One Through Ten

The district court noted that the substance of Caldeira's federal claim was the alleged wrongful termination of his employment arising from "episode" eleven. Because it had been decided in the judicially confirmed arbitration award that the discharge was self-inflicted by Caldeira's insubordination in the face of a valid work order, the court found itself "bound to accept this causal connection." ER 82 at 4. Accordingly, the district court found that the alleged wrongdoings of the defendants arising from "episodes" one through ten constituted neither the cause in fact nor the proximate cause of Caldeira's injury. *Id.* We agree.

Summary judgment in favor of the defendants was appropriate in regard to these alleged "episodes." The district court correctly concluded that, as a matter of law, Caldeira was collaterally estopped from attempting to establish some other "improper" cause for his discharge. *See, e.g., Wozniak v. DuPage County,* 845 F.2d

677 (7th Cir.1988) (where it was determined in a prior mandamus action that proper cause existed for denying plaintiff an excavation permit, subsequent § 1983 action alleging defendants conspired to refuse issuance of the permit was properly dismissed on collateral estoppel grounds).

### B. Section 1985(3) Conspiracy Claim

The substance of Caldeira's section 1985(3) claim was that the Union conspired with the County to effect his discharge by allegedly failing to adequately represent him during grievance and arbitration proceedings. On appeal, he contends the district court erred in granting summary judgment on this claim. We find no error.

■ First, to prove a section 1985 conspiracy between a private party and the government under section 1983, the plaintiff must show an agreement or "meeting of the minds" by the defendants to violate his constitutional rights. *Fonda v. Gray,* 707 F.2d 435, 438 (9th Cir.1983) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970)). The district court correctly concluded that Caldeira had wholly failed in this regard and that his conspiracy allegations were unsupported by any evidence, circumstantial or otherwise, that would convince a "fair-minded jury" to find in his favor. ER 82 at 5.

Second, pursuant to the above analysis, Caldeira failed to satisfy the causal relationship between the alleged acts done in furtherance of the "conspiracy" and his resulting injury. *See Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir.1978) ("A person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that *causes* the deprivation of which the complaint is made.... (Emphasis added)").

---

4. Caldeira was apparently under the mistaken belief that the state circuit court's confirmation order was unappealable. Thus, by the time his erroneous assessment was corrected, it was too

late to do so. In any event, his failure "to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy." *Kremer,* 456 U.S. at 485, 102 S.Ct. at 1899.

■ Third, the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations. *Cassettari v. Nevada County, Cal.,* 824 F.2d 735, 739 (9th Cir. 1987) (citing *Dooley v. Reiss,* 736 F.2d 1392, 1395 (9th Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984)).

Finally, Caldeira never alleges invidiously discriminatory, racial or class-based animus, which is necessary to state a claim under section 1985(3). *United Brotherhood of Carpenters v. Scott,* 463 U.S. 825, 834–35, 103 S.Ct. 3352, 3359, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).[5]

## V

## CONCLUSION

The district court judgment is AFFIRMED.

---

5. Consistent with the *post hoc* rationalizations that pervade his claims, Caldeira suggests in his reply brief that we remand so he may be given leave to further amend his complaint to allege that as a Portuguese he is a member of a class protected under section 1985(3). Caldeira's retrospective attempt to phrase his case in "national-origin" terms is not persuasive. In any event, it would not be sufficient to overcome the other deficiencies of his section 1985 claim.