**Edgar H.W. LUM, Plaintiff,**

v.

**CITY AND COUNTY OF HONOLULU, Defendant.**

**Civ. No. 80–0384.**

United States District Court, D. Hawaii.

Oct. 31, 1989.

William Jenner, Honolulu, Hawaii, for plaintiff.

Richard Wurdeman, Rodney Veary, Honolulu, Hawaii, for defendant.

## ORDER DENYING MOTION FOR RECONSIDERATION

KAY, District Judge.

The defendant moves this Court for reconsideration of its July 7, 1988 and June 8, 1989 orders denying summary judgment on plaintiff's Title VII claims. The defendant argues that the state court confirmation of an arbitration award in favor of the City must be given "full faith and credit" pursuant to 28 U.S.C. § 1738, and that plaintiff is therefore precluded from relitigating whether his dismissal was the result of racial discrimination or retaliation for the filing of prior grievances. The basis of the motion for reconsideration is the Ninth Circuit's recent decision in *Caldeira v. County of Kauai*, 866 F.2d 1175 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989).

## BACKGROUND

On July 17, 1980 plaintiff filed this action against his former employer, the City and County of Honolulu ("the City"), pursuant to Title VII and 42 U.S.C. § 1983. Plaintiff alleges that the dismissal from his job as an "Internal Control Analyst" was the result of racial discrimination, and in retaliation for plaintiff's filing of charges with the Equal Employment Opportunity Commission. In addition, plaintiff charges that he was deprived of his pretermination procedural due process rights as a public employee, and that he has suffered severe mental pain and suffering as a result of the defendant's conduct.

This matter did not move forward for several years due to pending state proceedings. In early 1986, an arbitration hearing was held pursuant to the collective bargaining agreement between the City and plaintiff's union, the Hawaii Government Employees Association. On January 14, 1987, a lengthy decision was filed by the arbitrator in which he concluded that the City had cause to dismiss plaintiff for "misconduct". The arbitrator also stated that he could find no "objective evidence that Grievant's discharge was motivated by any racial discrimination", and that plaintiff had not met his burden of establishing that his dismissal was in retaliation for any prior complaints or grievances. (Arbitration Award and Decision, pg. 15).

On January 27, 1987, plaintiff filed a Motion to Vacate the Arbitrator's Award before the Hawaii Labor Relations Board. This motion was dismissed on March 10, 1987 on the grounds that the Board did not have the authority to vacate an arbitration award, and that the proper forum was the Circuit Court pursuant to Hawaii Revised Statutes ("HRS") Chapter 658. Plaintiff filed a *pro se* appeal of the Board's decision to the Hawaii Circuit Court on April 10, 1987. The Board's decision was affirmed on October 13, 1987. Undaunted, plaintiff appealed to the Hawaii Supreme Court.

Meanwhile, the defendant moved on March 31, 1987 in the Circuit Court to "confirm" the arbitration award pursuant

to HRS § 658–8. This motion was granted on May 19, 1987 on the ground that the award had not been vacated or otherwise modified. Plaintiff's motion for a rehearing was denied on January 19, 1988. Plaintiff also appealed these decisions to the Hawaii Supreme Court.

On June 3, 1988, the City moved this Court for summary judgment on the Title VII Count. The defendant argued that the arbitrator's finding that there was no evidence of discrimination or retaliation estopped plaintiff from relitigating his Title VII claims in this forum. This Court denied defendant's motion in an order dated July 7, 1988, and published as *Lum v. City and County of Hawaii,* 690 F.Supp. 914 (D.Haw.1988). Preliminarily, this court pointed out that although state court judgments may be given preclusive effect in Title VII actions (*Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)), that the pending appeals before the Hawaii Supreme Court foreclosed the application of any preclusion doctrines. For the reasons given below, we concluded that the arbitration award could not completely preclude the Title VII action, but that once the pending appeals were resolved, the arbitrator's decision could be admitted as evidence, and accorded such weight as the court deems appropriate. *Lum,* at 915–16.

The motion was essentially denied on the ground that a state court judgment confirming an arbitration award would not preclude a Title VII action. This Court relied upon the Supreme Court's decision in *Alexander v. Gardner–Denver Company,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) to hold that an arbitration award simply defines the contractual rights of a plaintiff under a collective bargaining agreement, and not the distinct and separate statutory rights under Title VII. *Cf., McDonald v. City of West Brand Mich.,* 466 U.S. 284, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302 (1984) (arbitration proceedings will not preclude an action under 42 U.S.C. § 1983).

We ruled that arbitration was not an adequate forum for the resolution of Title VII claims. As stated by the Supreme Court in the *Kremer* case, 102 S.Ct. 1883, 1895–96:

> [*Alexander*] rested on the inappropriateness of arbitration as a forum for the resolution of Title VII issues. The arbitrator's task, we recognized, is to 'effectuate the intent of the parties rather than the requirements of the enacted legislation.' The arbitrator's special competence 'is the law of the shop, not the law of the land,' and the fact finding process in arbitration usually is not equivalent to judicial fact finding.

*See also, Criswell v. Western Airlines, Inc.,* 709 F.2d 544, 547–49 (9th Cir.1983), *aff'd,* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (deference to arbitrator's decision not proper in actions under the ADEA); and *Amaro v. Continental Can Co.,* 724 F.2d 747, 750 (9th Cir.1984) (ERISA protections not provided in arbitration proceedings).

We therefore reasoned that if the arbitration award could not preclude the Title VII action, then the court's confirmation of such an award under the Hawaii statutory procedure should not be given any greater effect. In accordance with *Alexander,* 94 S.Ct. at 1025 n. 21 we went on to hold that the arbitrator's decision would be admitted into evidence, and given some weight at trial. *See also, McDonald,* 104 S.Ct. at 1804 n. 13.

The defendant refiled its motion for summary judgment on the Title VII Count on March 23, 1989, after the Hawaii Supreme Court issued orders on August 18, 1988 and December 20, 1988 denying plaintiff's appeals relating to the arbitration decision. This second motion was also denied; although the judicial confirmation of the arbitration award was now final, our prior analysis, based upon *Alexander v. Gardner–Denver Company, supra,* still foreclosed summary judgment on collateral estoppel grounds.

The City now moves for reconsideration of our orders denying summary judgment solely on the basis of the recent decision in *Caldeira v. County of Kauai,* 866 F.2d

1175 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989).

## DISCUSSION

### A. The Caldeira Decision.

In the *Caldeira* case, the Ninth Circuit held that an arbitrator's decision which is confirmed by a Hawaii state court is a "judicial proceeding" to be given "full faith and credit" under 28 U.S.C. § 1738, and accordingly, preclusive effect in a subsequent federal proceeding.

The *Caldeira* decision upheld the District Court's order granting summary judgment to the defendant county employer in a Section 1983 action. The plaintiff alleged that his dismissal from employment as a lifeguard for the County of Kauai constituted a violation of his substantive due process right not to be terminated without just cause. Pursuant to a collective bargaining agreement, the matter went to an arbitrator who ruled that the County had just cause to dismiss Caldeira. After the plaintiff filed his federal civil rights action, the defendant successfully moved in the state Circuit Court to confirm the arbitration decision.

Under these circumstances, the Court of Appeals, while acknowledging that the Supreme Court has not addressed the issue, held that:

> [t]he state court's confirmation of the arbitration award constitutes a judicial decision for purposes of section 1738, and thus must be given the full faith and credit it would receive under state law. *See Rider v. Pennsylvania,* 850 F.2d 982, 994 (3d. Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 556 [102 L.Ed.2d 582 (1988) ]
>
> . . . .

866 F.2d at 1176. In the absence of any state decision giving preclusive effect to a confirmed arbitration award, the Court looked to the general requirements for collateral estoppel under Hawaii Law (*Silver v. Queen's Hospital,* 63 Haw. 430, 436, 629 P.2d 1116.(1981)), and determined that the first two had been met: 1) the issue decided by the arbitrator, that is, whether there was good cause for plaintiff's dismissal, was identical to the central issue in the civil rights claim; and 2) the same parties were involved in the two proceedings.

The Court also held that the third requirement was satisfied: the "confirmed" arbitration award constituted a "final judgment on the merits" under Hawaii law. In particular, the Court relied on the statutory language of HRS Chapter 658. Section 658–12 provides that a Circuit Court order confirming, modifying, or correcting an arbitration award (*see,* HRS §§ 658–8 & 658–10) when filed in the office of the clerk of the circuit court, "shall constitute the entry of judgment", and that an appeal may be taken from that judgment. In addition, Section 658–14 states that such a judgment has "the same force and effect, in all respects as, and is subject to all the provisions of law relating to, a judgment in an action; and it may be enforced, as if it had been rendered in an action in the court in which it is entered."

Furthermore, the Court determined that the confirmed arbitration award, besides meeting the Hawaii requirements for collateral estoppel, also fulfilled the additional due process requirement of a "full and fair opportunity to litigate" established in *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). The Court specifically held that the "minimum procedural requirements" of due process were met by the mechanisms available to plaintiff to argue his claim through arbitration, and to subsequently contest the arbitration award pursuant to HRS Chapter 658. Specifically, the Court noted that Caldeira opposed the defendant's motion to confirm the award pursuant to Section 658–8, and that he filed his own motion to vacate the arbitrator's decision in accordance with Section 658–9. Additionally, plaintiff was able to appeal the adverse decisions on these motions to the Hawaii Supreme Court.

In conclusion, the Court held that "[i]t is overly apparent that Caldeira received a full and fair opportunity to litigate his claim as measured by minimal due process. He is thus barred from pursuing his section

1983 claims in federal court by the prior Hawaii proceedings." 866 F.2d at 1181.

### B. Application of Caldeira to this action.

■ There is a significant difference between the facts underlying *Caldeira*, and the instant case. The Court in *Caldeira* apparently believed that the plaintiff was afforded some review of the merits of the arbitrator's decision in the Hawaii state courts. Addressing plaintiff's arguments as to the limited and summary nature of the judicial confirmation process, the Court stated (866 F.2d at 1180 n. 3):

Nevertheless, as the Eleventh Circuit has recognized, '[t]he teaching of *Kremer* ... is that federal courts must accord preclusive effect to issues litigated and decided on the merits, *even though the review on the merits is sharply limited*'. *Sykes v. McDowell*, 786 F.2d 1098, 1103 (11th Cir.1986).

Caldeira similarly objects to the limited argument [on the motion for confirmation]. During oral argument on the County's motion, however, Caldeira only elected to argue that the ... motion was time barred. Thus Caldeira is hardly in a position to complain; *he had the opportunity to challenge the arbitrator's award on a variety of other grounds. See [HRS] §§ 658–8 and 658–10. In any event, the subsequent motion for reconsideration, and argument on that motion squarely attacked the merits of the arbitrator's decision.* (Emphasis added).

In contrast, the plaintiff in this matter did not receive any judicial consideration of the merits of the arbitrator's decision. First of all, although plaintiff opposed the defendant's motion for confirmation of the arbitration award, HRS § 658–8 provides that the Circuit Court "shall" grant an order confirming an arbitration award when the prevailing party merely demonstrates that the award has not been vacated or modified pursuant to sections 658–9 or 658–10.

In addition, even though plaintiff did not move the Circuit Court to vacate or modify

the award, neither HRS § 658–9 nor § 658–10 permits the Circuit Court to review the merits of the arbitrator's decision. A party may move to vacate an award under section 658–9 for the following reasons:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, ...;

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearings, ..., or in refusing to hear evidence, pertinent and material ...; or of any other misbehavior, by which the rights of any party have been prejudiced;

(4) Where the arbitrators exceed their powers, ... that a mutual, final, and definite award, ..., was not made.

Similarly, pursuant to section 658–10, a state court may modify or correct an award upon the application of any party for certain reasons *not* bearing upon the merits of the arbitrator's decision:

(1) Where there was an evident miscalculation of figures, or evident mistake in the description of any person, thing, or property ...;

(2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is not a matter affecting the merits of the decision upon the matters submitted;

(3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.

It is clear that under these statutes, a state court "has no business weighing the merits of the ... award." *Local Union 1260 v. Hawaiian Telephone Co.*, 49 Haw. 53, 58, 411 P.2d 134 (1966); *In re Oahuan Ltd.*, 4 Haw.App. 295, 298–99, 666 P.2d 603 (1983). Indeed, under Hawaii law, although the arbitrator may have erred in applying the law, finding the facts, or in entering an award which is contrary to the evidence, judicial reversal is not permitted. *Univ. of Hawaii Profess. Assembly v. Univ. of Hawaii*, 66 Haw. 214, 225, 659 P.2d 720 (1983). *See also, Kim v. Mel Cummins Bldg. Contractor*, 57 Haw. 186, 552 P.2d 1117 (1976). In fact, the Hawaii

Supreme Court has stated that review of arbitration awards is confined "to the strictest possible limits." *Mars Constructors, Inc. v. Tropical Enters. Ltd.*, 51 Haw. 332, 335, 460 P.2d 317 (1969).

As stated previously, the court in *Caldeira* evidently believed that the plaintiff received some review on the merits by the state courts in the confirmation process. In support of its determination that the state court review of an arbitration award in Hawaii was entitled to "full faith and credit", the court held that "as the Eleventh Circuit has recognized, '[t]he teaching of *Kremer* ... is that federal courts must accord preclusive effect to issues litigated and decided on the merits, even though the review on the merits is sharply limited.' *Sykes v. McDowell*, 786 F.2d 1098, 1103 (11th Cir.1986)." 866 F.2d at 1180 n. 3. In addition, the Court found that Caldeira "squarely attacked the merits of the arbitrator's decision" on reconsideration of the Circuit court's confirmation of the award. *Id.*

This finding of some merits review comports with the requirement, expressed in *Kremer v. Chemical Const. Co., supra,* that an arbitrator's decision must be subject to some consideration of the merits by a court before it may be given "full faith and credit" under 28 U.S.C. § 1738. "In our system of jurisprudence the usual rule is that merits of a legal claim once decided in a court of competent jurisdiction are not subject to redetermination in another forum." 102 S.Ct. at 1899. In ruling that Title VII did not impliedly repeal the full faith and credit clause, the *Kremer* Court found that "[n]othing in the legislative history ... suggests that Congress considered it necessary or desirable to provide an absolute right to relitigate in federal court an issue resolved by a state court." *Id.* at 1893.

Furthermore, the Supreme Court's determination that plaintiff received a "full and fair opportunity to litigate the merits" was based on the fact that he was afforded a "panoply of procedures" at the administrative level which were "complemented by administrative as well as judicial review".

*Id.* In particular, the judicial review of the administrative decision was clearly characterized as being on the merits. "The [state court's] affirmance of the [agency's] dismissal necessarily decided that petitioner's claim under New York law was meritless, and thus it decided that a Title VII claim arising from the same events would be equally meritless." 102 S.Ct. at 1896. *See also, Id.* at 1896–97 n. 19 & n. 21.

In a similar context, this Circuit ruled prior to *Kremer* that a judicially confirmed arbitration award would not be given preclusive effect, in part, because of the absence of some review on the merits. *Aleem v. General Felt Industries, Inc.,* 661 F.2d 135 (9th Cir.1981). "The court's function in reviewing an arbitrator's decision is limited to determining whether the arbitrator exceeded his authority. The court cannot review the merits of the arbitrator's decision." *Id.,* at 137 (*citing, United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960)).

Likewise, in *Sykes v. McDowell,* the decision cited by the *Caldeira* court for the idea that limited judicial review is sufficient (866 F.2d at 1180 n. 3), the Eleventh Circuit held that a state administrative decision would *not* be given preclusive effect because the state court review reached only procedural and jurisdictional questions, and *was not on the merits.* "The rule that even limited review counts as review does not control Sykes' case; he did not bring his case in state court *and did not receive any merits review."* 786 F.2d at 1098 (emphasis added). Moreover, in the cases relied on by the *Sykes* court for its "limited review" rule, the states provided *some* review of the merits of an administrative decision. *See e.g., Gorin v. Osborne,* 756 F.2d 834, 836 n. 10 & 837 (11th Cir. 1985) (the Georgia statute provided that the court could reverse an administrative decision on the grounds of clearly erroneous factual findings, an "arbitrary, capricious" decision, or an abuse of discretion).

Moreover, the requirement of some judicial review of the merits is clearly expressed in *Rider v. Commonwealth of*

*Pennsylvania,* 850 F.2d 982 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988). In *Rider,* the only case other than *Caldeira* to hold that a reviewed arbitration award is entitled to "full faith and credit", the Third Circuit gave preclusive effect to a state court decision that *reversed* an arbitration award. The Court, in finding that the state court had rendered a "final judgment on the merits", specifically rejected the contention that the state court "never adjudicated the merits of [the] discrimination claim." 850 F.2d at 992. It stated that the Pennsylvania court in *Rider* (along with the New York court in *Kremer*) "clearly considered and disposed of the merits that gave rise to this dispute...." *Id.* at 993. In addition, the Court distinguished two decisions (*Bottini v. Sadore Management Corp.,* 764 F.2d 116 (2d Cir.1985), and *Kirk v. Bremen Comm. High School Dist. B.,* 811 F.2d 347 (7th Cir.1987)), which did not give preclusive effect to reviewed arbitration awards, on the ground that the state courts did not address the discrimination claims at issue in federal court. As to the second case, the Court stated:

> "*Kirk* is inapposite because there the state court never addressed Kirk's discrimination claim and thus decided no issue that was asserted in Kirk's subsequent Title VII suit. Hence, unlike the instant case in which the [discrimination] question was presented and decided in state court, in *Kirk* no basis existed for claim or issue preclusion as a result of the state court's action.

It is evident that the element of a meaningful judicial review is a vital component of the *Rider* decision. In conclusion, the Court held that (850 F.2d at 995):

> Here ... the underlying event giving substance to the claim of discrimination has ... been the same. That very issue, ... has been tried and decided, albeit by a state court. .... Thus we are satisfied that ... a federal discrimination action should be precluded by a prior state court proceeding between the same parties when the state proceeding has decided the same issues of discrimination on the merits.

More recent authority from the same Circuit that decided *Rider* stands for the proposition that an arbitration decision should not be given preclusive effect under 28 U.S.C. § 1738 unless the state affords some judicial review on the merits. In *Jalil v. Avdel Corp.,* 873 F.2d 701 (3rd Cir.1989), the Court declined to give an arbitrator's decision preclusive effect even though it had been affirmed by a New Jersey state court. The Court found it determinative that the New Jersey court was not empowered to address the substance of the Title VII action, or to review whether the arbitrator properly rejected plaintiff's claims (*Id.* at 705):

> The court applied the very narrow standard of review that allows for assessing *whether the arbitrator exceeded his authority or whether his decision was obtained by undue means.* [T]he court itself did not address the Title VII issues raised by plaintiff. Thus, for example, the state court itself made no finding as to the correctness of the arbitrator's rejection of plaintiff's discrimination and retaliation claims. (Emphasis in original).

The *Jalil* Court therefore rejected the defendant's claim of issue preclusion, and plainly distinguished *Rider* on the issue of judicial review:

> In contrast to *Rider,* however, the state court here gave no consideration to plaintiff's Title VII rights, explicitly refusing to stand as 'second guessers of what the arbitrator did.' Thus, here, unlike *Rider,* the state court reviewing the arbitrator's decision did not address the same issues raised in Jalil's Title VII action. *Cf. Kremer,* ... 102 S.Ct. at 1896 n. 21 (construing the state court's affirmance of plaintiff's discharge as a decision that the claim lacked merit as a matter of law). Issue preclusion therefore poses no bar to plaintiff's action here.

Similarly, the District Court in *Handley v. Phillips,* 715 F.Supp. 657, 665–66 (M.D.Pa. 1989), held that a suit brought under Section 1983 and Title VII was not precluded by a judicially confirmed arbitration award because of the limited scope of the judicial

review in light of the constitutional and statutory rights at issue.

The Court's own research did not turn up a single case where preclusive effect was given to a judicially reviewed administrative, or arbitration decision without the review encompassing some appraisal of the merits. *See e.g., Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1520 (9th Cir.1987) (Administrative decision given preclusive effect where reviewing court found that there was no abuse of discretion and that there was sufficient evidence to support finding); *Swapshire v. Baer*, 865 F.2d 948, 951 (8th Cir.1989) (Judicial review on the merits where court found decision not arbitrary or capricious, not contrary to the law, and reasonable, and court authorized to hear additional evidence); *Unger v. Consolidated Foods Corp.*, 693 F.2d 703, 705–706 (7th Cir.1982), *cert. denied*, 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983) (Illinois statute provided deferential review equivalent to that endorsed in *Kremer*). *Cf., Scroggins v. State of Kansas*, 802 F.2d 1289, 1292–93 (10th Cir.1986) (State court affirmance of administrative board not given preclusive effect in Title VII action when judicial review narrow and conclusory, and plaintiff not allowed full and fair opportunity to litigate the issue).

In this Title VII action, in contrast to *Caldeira* and the cases cited above, there is no evidence in the record to suggest that plaintiff was able to obtain any judicial review of the merits of the arbitration award. The Hawaii courts did not consider the arbitration award for errors in fact or in law; in particular, no court reviewed the arbitrator's findings that plaintiff's discharge was not the result of racial discrimination or in retaliation for the prior filing of grievances. Under these circumstances, plaintiff is not precluded from litigating the merits of his Title VII action in this forum.

█ The confirmed arbitration award in this case is denied preclusive effect for a second reason. The Supreme Court has consistently held that an arbitration proceeding is an inadequate forum for the resolution of statutory and constitutional rights. For example, as stated in *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 104 S.Ct. 1799, 1813, 80 L.Ed.2d 302 (1984): "although arbitration is well suited to resolving contractual disputes, our decisions in *Barrentine* and *Gardner–Denver* compel the conclusion that it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." *See also, Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985).

Beginning with *Alexander v. Gardner–Denver Company*, 94 S.Ct. at 1024, the Supreme Court has noted the specific reasons why arbitration is not the proper forum to decide federal statutory and constitutional rights:

Arbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the final resolution of rights created by Title VII. This conclusion rests first on the special role of the arbitrator, whose task is to effectuate the intent of the parties rather than the requirements of the enacted legislation. Where the collective-bargaining agreement conflicts with Title VII, the arbitrator must follow the agreement. To be sure, the tension between contractual and statutory objectives may be mitigated where a collective bargaining agreement contains provisions facially similar to those of Title VII. But other facts may still render arbitral processes comparatively inferior to judicial processes in the protection of Title VII rights. Among these is the fact that the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land. Parties usually choose an arbitrator because they trust his knowledge and judgment concerning the demands and norms of industrial relations. On the other hand, the resolution of statutory or constitutional issues is a primary responsibility of the courts, and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be

given meaning only by reference to public law concepts.

Moreover, the factfinding process in arbitration usually is not equivalent to judicial factfinding. The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable. And as this Court has recognized, '[a]rbitrators have no obligation to the court to give reasons for an award.' Indeed, it is the informality of arbitral procedure that enables it to function as an efficient, inexpensive, and expeditious means for dispute resolution. This same characteristic, however, makes arbitration a less appropriate forum for the final resolution of Title VII issues than federal courts. (Citations omitted).

*See also, McDonald,* 104 S.Ct. at 1083–04, and *Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 101 S.Ct. 1437, 1446–47, 67 L.Ed.2d 641 (1981).

In the *McDonald* case, the Supreme Court reemphasized its concern over the arbitrator's limited authority to enforce federal civil rights legislation (104 S.Ct. at 1803):

> [B]ecause an arbitrator's authority derives solely from the contract, an arbitrator may not have the authority to enforce § 1983. As we explained in *Gardner–Denver:* "The arbitrator ... has no general authority to invoke public laws that conflict with the bargain between the parties.... If an arbitral decision is based 'solely upon the arbitrator's view of the requirements of enacted legislation,' rather than on an interpretation of the collective-bargaining agreement, the arbitrator has 'exceeded the scope of the submission,' and the award will not be enforced." Indeed, when the rights guaranteed by a § 1983 conflict with the provisions of the collective-bargaining agreement, the arbitrator must enforce the agreement. (Citations omitted.)

The Ninth Circuit, prior to *Caldeira* with its supplemental requirement of judicial review of the merits, similarly rejected the view that arbitration could adequately protect federal statutory rights. *See, Oubichon v. North American Rockwell Corporation,* 482 F.2d 569, 572–74 (9th Cir.1973); *Aleem v. General Felt Industries, Inc.,* 661 F.2d 135, 136–37 (9th Cir.1981); *Criswell v. Western Airlines, Inc.,* 709 F.2d 544, 547–49 (9th Cir.1983), aff'd, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985); and *Amaro v. Continental Can Co.,* 724 F.2d 747, 750 (9th Cir.1984).

The foundation of these decisions, namely that arbitration is not a proper substitute for judicial resolution of federal statutory and constitutional rights, is equally applicable to the arbitration award which receives some modicum of judicial review under state law. The rule established in the *Kremer* case, that state court judgments affirming administrative decisions are entitled to "full faith and credit" under Section 1738 is not applicable here. The arbitration award which is confirmed in state court is distinguished from the administrative decision that is affirmed on appeal. As stated by the Supreme Court in *Kremer v. Chemical Const. Corp.,* 102 S.Ct. at 1895–96:

> *Gardner–Denver* also rested on the inappropriateness of arbitration as a forum for the resolution of Title VII issues. The arbitrator's task, we recognized, is to "effectuate the intent of the parties rather than the requirements of enacted legislation." The arbitrator's specialized competence is 'the law of the shop, not the law of the land,' and 'the factfinding process in arbitration usually is not the equivalent to judicial factfinding.' *These characteristics cannot be attributed to state administrative boards and state courts. State authorities are charged with enforcing laws, and state courts are presumed competent to interpret those laws.* (Emphasis added.)

For the reasons set forth above, the *Caldeira* decision is not controlling in this case. The plaintiff here did not receive any consideration of the merits of his Title VII claims in state court, and the arbitration

proceeding is an inadequate forum for the resolution of such federal statutory rights. Accordingly, IT IS HEREBY ORDERED that defendant's motion for reconsideration is denied.